# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Students for Fair Admissions, Incorporated,

    *Plaintiff-Appellant*

v.

University of Texas at Austin; James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, Interim President of the University of Texas at Austin in his Official Capacity; Board of Regents of the Texas State University System; David J. Beck, Member of the Board of Regents in his Official Capacity; Christina Melton Crain, Member of the Board of Regents in her Official Capacity; Kevin P. Eltife, Member of the Board of Regents in his Official Capacity; R. Steven Hicks, Member of the Board of Regents in his Official Capacity; Jodie Lee Jiles, Member of the Board of Regents in his Official Capacity; Janiece Longoria, Member of the Board of Regents in her Official Capacity; Nolan Perez, Member of the Board of Regents in his Official Capacity; Kelcy L. Warren, Member of the Board of Regents in his Official Capacity and James C. (Rad) Weaver, Member of the Board of Regents in his Official Capacity; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; and Miguel Wasielewski, Executive Director for Office of Admissions,

    *Defendants-Appellees*

The Black Student Alliance; The Texas Orange Jackets; Texas NAACP; Adaylin Alvarez; Morgan Bennett; Liz Kufour; Brianna Mallorie McBride; Desiree Ortega-Santiago; Nima Rahman; Alexandra Trujillo, Rosaleen Xiong,

    *Intervenor Defendants-Appellees*

On Appeal from the United States District Court Western District of Texas, Austin Division, Civil Action No. 1:20-cv-00763

# BRIEF OF DEFENDANTS-APPELLEES

Matthew C. Powers
Texas Bar No. 24046650
William Christian
Texas Bar No. 00735905
Marianne W. Nitsch
Texas Bar No. 24098182
Graves, Dougherty,
Hearon & Moody, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804
Email: mpowers@gdhm.com
Email: wchristian@gdhm.com
Email: mnitsch@gdhm.com

**Counsel for Defendants-Appellees**
**University of Texas at Austin, et al.**

## CERTIFICATE OF INTERESTED PERSONS

No. 24-50631

*Students for Fair Admissions, Inc. v. University of Texas at Austin, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal:

Plaintiff-Appellant

      Students for Fair Admissions, Inc.

      Counsel for Plaintiff-Appellant:
          Consovoy McCarthy PLLC
          Thomas R. McCarthy
          J. Michael Connolly
          Cameron T. Norris
          Steven C. Begakis

Defendants-Appellees

      Board of Regents of the University of Texas System[1] and the following officials:
          Christina Melton Crain, Regent
          Kevin P. Eltife, Regent
          Robert P. Gauntt,* Regent[2]

---

[1] The case caption misnames the Board of Regents as "Board of Regents of the Texas State University System." The correct name is: "Board of Regents of the University of Texas System."

[2] The names of individuals holding some offices in the case caption are outdated. This certificate lists the persons currently holding the offices named as official-capacity defendants. An asterisk denotes a change from the time this suit was originally filed. For example, Regent Robert P. Gauntt has replaced former Regent R. Steven Hicks.

Jodie Lee Jiles, Regent
Janiece Longoria, Regent
Nolan Perez, Regent
Stuart W. Stedman,* Regent
Kelcy L. Warren, Regent
James C. "Rad" Weaver, Regent
James B. Milliken, Chancellor
Archie L. Holmes, Jr.,* Executive Vice Chancellor for Academic
    Affairs
Daniel H. Sharphorn, Vice Chancellor and General Counsel

University of Texas at Austin and the following officials:
Jay Hartzell, President
Rachel Davis Mersey,* Executive Vice President and
    Provost
Brian Dixon,* Vice Provost for Enrollment Management
Miguel Wasielewski, Executive Director of Admissions[3]

Counsel for Defendants-Appellees:
Graves, Dougherty, Hearon & Moody, P.C.
Matthew C. Powers
Marianne W. Nitsch
William Christian

Intervenors-Appellees

Texas National Association for the Advancement of Colored People
Black Student Alliance
Texas Orange Jackets
Adaylin Alvarez
Morgan Bennett
Brianna Mallorie McBride
Liz Kufour
Desiree Ortega-Santiago
Nima Rahman
Alexandra Trujillo

---

[3]    UT Austin no longer has an Executive Director of Admissions. Mr. Wasielewski's current position at UT Austin is Interim Senior Vice Provost for Strategic Enrollment Management.

Rosaleen Xiong

Counsel for Intervenors-Appellees:
      The Lawyers' Committee For Civil Rights Under Law
      Maya Brodziak
      Dariely Rodriguez
      Sumayya Saleh

                  */s/Matthew C. Powers*
                Attorney of Record for
                Defendants-Appellees
                University of Texas at Austin, et al.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is not necessary, because this appeal involves the application of settled precedent to the district court's uncontroverted findings of fact.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................................ 3

STATEMENT REGARDING ORAL ARGUMENT ...................................................... 6

TABLE OF AUTHORITIES ......................................................................................... 9

ISSUES PRESENTED ................................................................................................ 13

STATEMENT OF THE CASE .................................................................................... 14

SUMMARY OF THE ARGUMENT ........................................................................... 18

STANDARD OF REVIEW ......................................................................................... 19

ARGUMENT ............................................................................................................. 20

I.   This case became moot in 2023 when UT Austin ceased considering race in admissions in compliance with the U.S. Supreme Court's decision in *SFFA v. Harvard* ....................................................................................... 20

  A.  UT Austin no longer considers race in admissions decisions ...................... 21

    1.  UT Austin removed applicants' responses to the "checkbox" prompt from application files ................................................................. 21

    2.  UT Austin eliminated "race and ethnicity" as a subfactor in holistic review ................................................................................................. 22

    3.  UT Austin trained file reviewers on how to handle applicants' unsolicited disclosure of race and ethnicity information ....................... 23

    4.  UT Austin is using supervision and review of its admissions process to ensure compliance with the *SFFA* decision ......................... 24

  B.  The Board of Regents no longer allows its component institutions to consider race in admissions ......................................................................... 24

  C.  These policy changes mooted SFFA's claims for prospective relief .......... 25

  D.  The "voluntary cessation" exception to mootness does not apply because these policy changes were compelled by a change in the law and made in good faith ................................................................................. 29

II.  SFFA is not entitled to summary judgment ........................................................... 37

    A.  Because the district court did not rule on SFFA's motion, this Court should not review it on appeal ........................................................................ 37

    B.  SFFA is not entitled to declaratory or injunctive relief................................ 38

CONCLUSION AND RELIEF REQUESTED ........................................................... 41

CERTIFICATE OF COMPLIANCE ........................................................................ 42

CERTIFICATE OF SERVICE .................................................................................... 42

# TABLE OF AUTHORITIES

CASES                                                                PAGE

*Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urban Dev.*,
    618 Fed. Appx. 781 (5th Cir. 2015) (per curiam)....................................... 29

*Anderson v. City of Bessemer*,
    470 U.S. 564 (1985) ............................................................................. 19

*Ashcroft v. Mattis*,
    431 U.S. 171 (1977)............................................................................... 28

*Amawi v. Paxton*,
    956 F.3d 816 (5th Cir. 2020).............................................................29–30

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
    103 F.4th 383 (5th Cir. 2024) ............................................................... 34

*Book People, Inc. v. Wong*,
    91 F.4th 318 (5th Cir. 2024) ................................................................. 38

*Boudreaux v. La. State Bar Ass'n*,
    86 F.4th 620 (5th Cir. 2023) ................................................................. 31

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006)................................................................. 21

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006).........................................................................21–22

*Daves v. Dallas County, Texas*,
    64 F.4th 616 (5th Cir. 2023) (en banc),
    *cert. denied*, 144 S. Ct. 548 (2024) ........................................ 25–26, 30–31

*DeOtte v. Nevada*,
    20 F.4th 1055 (5th Cir. 2021) ............................................................... 21

*Diamond v. Pa. State Educ. Ass'n*,
    399 F. Supp. 3d 361 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) .......... 31

*Dierlam v. Trump*,
    977 F.3d 471 (5th Cir. 2020)................................................................. 20

*Fed. Bureau of Investigation v. Fikre,*
 601 U.S. 234 (2024) ........................................................................... 34

*Fisher v. Univ. of Tex. at Austin (Fisher I),*
 570 U.S. 297 (2013) ........................................................................... 14

*Fisher v. Univ. of Tex. at Austin (Fisher II),*
 579 U.S. 365 (2016) ..................................................................... 14, 18

*Flores v. Pompeo,*
 936 F.3d 273 (5th Cir. 2019) ........................................................... 19

*Freedom From Religion Found., Inc. v. Abbott,*
 58 F.4th 824 (5th Cir. 2023) ....................................................... 35–36

*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.,*
 528 U.S. 167 (2000) ........................................................................... 35

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l,*
 695 F.3d 330 (5th Cir. 2012) ........................................................... 19

*Grutter v. Bollinger,*
 539 U.S. 306 (2003) ........................................................................... 36

*Hamilton v. Dallas County,*
 79 F.4th 494 (5th Cir. 2023) (en banc) .......................................... 30

*Harris v. Univ. of Massachusetts Lowell,*
 43 F.4th 187 (1st Cir. 2022) ............................................................. 28

*Hartnett v. Pa. State Educ. Ass'n,*
 963 F.3d 301 (3d Cir. 2020) ............................................................. 31

*Hooks v. Landmark Indus., Inc.,*
 797 F.3d 309 (5th Cir. 2015) ........................................................... 19

*Hopwood v. Texas,*
 78 F.3d 932 (5th Cir. 1996) ............................................................. 36

*Janus v. Am. Fed'n of State, Cty., & Mun. Employees,*
 585 U.S. 878 (2018) ........................................................................... 31

*K.P. v. LeBlanc,*
 729 F.3d 427 (5th Cir. 2013) ........................................................... 21

*Los Angeles County v. Davis,*
    440 U.S. 625 (1979) .......................................................................... 29

*Lowery v. Tex. A&M Univ.,*
    696 F. Supp. 3d 272 (S.D. Tex. 2023), *aff'd,*
    No. 23-20481, 2024 WL 4614714 (5th Cir. Oct. 30, 2024) (per curiam) .......... 31

*Magnolia Island Plantation, L.L.C. v. Whittington,*
    29 F.4th 246 (5th Cir. 2022) ............................................................. 37

*McLain v. Real Estate Bd. of New Orleans, Inc.,*
    583 F.2d 1315 (5th Cir. 1978) ............................................................ 19

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York,*
    590 U.S. 336, 338 (2020) (per curiam) .................................................. 25

*Opulent Life Church v. City of Holly Springs,*
    697 F.3d 279 (5th Cir. 2012) ............................................................. 33

*PHH Mort. Corp. v. Old Republic Nat'l Title Ins. Co.,*
    80 F.4th 555 (5th Cir. 2023) .............................................................. 37

*Soc'y of Separationists, Inc. v. Herman,*
    959 F.2d 1283 (5th Cir. 1992) (en banc) ............................................... 38

*Sossamon v. Lone Star State of Tex.,*
    560 F.3d 316 (5th Cir. 2009), *aff'd,* 563 U.S. 277 (2011) ....................... 29, 34

*Speech First, Inc. v. Fenves,*
    979 F.3d 319 (5th Cir. 2020) ............................................................. 35

*Stewart v. Tex. Tech Univ. Health Scis. Ctr.,*
    No. 5:23-CV-007-H, 2024 WL 4996604 (N.D. Tex. July 17, 2024) .................. 32

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.,*
    600 U.S. 181 (2023) ........................................... 15, 18, 20, 23, 24, 28, 36

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin,*
    37 F.4th 1078 (5th Cir. 2022) ............................................................ 14

*Telco Commc'ns, Inc. v. Carbaugh,*
    885 F.2d 1225 (4th Cir. 1989) ............................................................ 31

*Texas v. Biden*,
20 F.4th 928 (5th Cir. 2021)*, rev'd*, 597 U.S. 785 (2022) ................................. 32–33

*Tex. Office of Pub. Util. Counsel v. F.C.C.*,
183 F.3d 393 (5th Cir. 1999) ................................................................. 29

*United States v. Fletcher ex rel. Fletcher*,
805 F.3d 596 (5th Cir. 2015) ................................................................. 40

*United States v. Fordice*,
505 U.S. 717 (1992) ............................................................................. 39

*United States v. U.S. Gypsum Co.*,
333 U.S. 364 (1948) ............................................................................. 19

*U.S. Navy SEALs 1–26 v. Biden*,
72 F.4th 666 (5th Cir. 2023) ................................................................. 32

*Williamson v. Tucker*,
645 F.2d 404 (5th Cir. 1981) ................................................................. 19

*Yarls v. Bunton*,
905 F.3d 905 (5th Cir. 2018) ............................................................. 21, 29

**CONSTITUTIONAL PROVISION**

Tex. Const. art. VII, § 10 ....................................................................... 35

**STATUTES**

Tex. Educ. Code § 51.4032 ..................................................................... 27

Tex. Educ. Code § 51.762 ................................................................... 21, 22

Tex. Educ. Code § 51.803 ....................................................................... 12

Tex. Educ. Code § 51.805 ....................................................................... 12

Tex. Educ. Code § 65.11 ......................................................................... 24

Tex. Educ. Code § 65.31 ................................................................... 25, 35

**RULE**

19 Tex. Admin. Code § 4.10 ............................................................... 21, 27

# ISSUES PRESENTED

1. Following the U.S. Supreme Court's 2023 decision in *SFFA v. Harvard*, UT Austin and the Board of Regents changed their policies to eliminate race and ethnicity as a factor in undergraduate admissions. Are SFFA's claims for prospective relief challenging UT Austin's prior undergraduate admissions policies moot?

2. In dismissing this case as moot, the district court expressly declined to rule on SFFA's motion for summary judgment.

    a. Should this Court review SFFA's unadjudicated motion?

    b. Is SFFA entitled to summary judgment?

## STATEMENT OF THE CASE

Under UT Austin's current admissions policy, as well as its prior admissions policy that predated the Supreme Court's 2023 *SFFA* decision, most of UT Austin's undergraduate admissions decisions are required by state law to be made based solely on high school rank. For 75% of each entering freshman class, UT Austin grants automatic admission to Texas students who graduate in the top percentages (currently the top 5%) of their high school class. Tex. Educ. Code § 51.803(a-1). For the remaining 25%, UT Austin uses a holistic-review process that includes a number of factors to guide the individual assessment of each applicant. *Id.* §§ 51.803(k), 51.805.

For many years prior to the Fall 2023 admissions cycle, race entered UT Austin's admissions process "at one stage and one stage only": in the calculation of a student's holistic review score. *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 374 (2016) ("*Fisher II*"). During that time, UT Austin "consider[ed] race as one of various factors in its undergraduate admissions process." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297 (2013) ("*Fisher I*"). In 2016, the Supreme Court held that UT Austin's limited consideration of race did not violate the Equal Protection Clause. *Fisher II*, 579 U.S. at 381–88.

SFFA brought this suit in 2020, contending that UT Austin's limited use of race in admissions was unlawful notwithstanding the Supreme Court's 2016 ruling to the contrary. The district court initially dismissed the suit on standing and *res judicata* grounds, but this Court reversed. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078 (5th Cir. 2022). While that appeal was pending, the Supreme Court granted certiorari in the *SFFA v. Harvard* and *SFFA v. University of North Carolina* cases to reconsider its prior precedents that had allowed limited consideration of race in

admissions. 142 S. Ct. 895. In July 2022, after this Court remanded the case to the district court, SFFA and UT Austin jointly asked the district court to stay the case pending the outcome of the Harvard and UNC *SFFA* cases. ROA.1588. The district court granted the motion and stayed the case. ROA.27 (text order).

In June 2023, the Supreme Court decided the Harvard and UNC *SFFA* cases in a consolidated decision, holding that those schools' use of race as a factor in undergraduate admissions was unlawful. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 231 (2023) ("*SFFA*") ("[T]he student must be treated based on his or her experiences as an individual — not on the basis of race."). Shortly thereafter, both UT Austin and the Board of Regents of the University of Texas System took numerous steps to ensure that UT Austin's admissions policies complied with the Supreme Court's decision.

Before the Fall 2023 admissions cycle began, UT Austin revised its admissions policy to remove race as a consideration in undergraduate admissions with the following specific changes: (1) race and ethnicity were removed as a subfactor that application reviewers could consider in the holistic review process; (2) applicants' self-supplied demographic "checkbox" information about their race and ethnicity was removed from the application materials provided to reviewers during the holistic review process; (3) reviewers were instructed that an applicant's race and ethnicity could not be considered in the holistic review process; (4) based on guidance provided by the Supreme Court in the *SFFA* decision, reviewers were trained on how to appropriately handle an applicant's unsolicited disclosure of his or her race or ethnicity in personal essays or other file materials, stressing that reviewers may not consider the applicant's race or

ethnicity as a positive or negative factor in their evaluation of the applicant; (5) during holistic review, the admissions office supervised file reviewers and conducted quality checks to ensure compliance with these new procedures; and (6) finally, UT Austin adopted a policy to conduct a review — after completion of the admissions cycle — to identify and address any challenges experienced in the implementation of these changes. ROA.1654–64.

Those changes were consistent with the UT System Board of Regents' August 2023 decision, citing the *SFFA* decision, to repeal a regents' rule that had allowed UT System component institutions to consider race as a factor in admissions. ROA.1945.

Based on the elimination of race as a factor in admissions in compliance with *SFFA*, the Board of Regents, UT Austin, and the official-capacity defendants of those institutions moved to dismiss this case as moot. ROA.1646. SFFA opposed the motion, arguing that: (1) UT Austin's admissions policy remained unlawful because UT Austin's admissions officers still had the ability to access a database containing information on the race or ethnicity of applicants; (2) the "voluntary cessation" exception prevented this case from being moot; and (3) SFFA's claim for permanent injunctive relief survived despite the changes to UT Austin's admissions policy. ROA.1920–24.

After reviewing the evidence, the district court concluded that this case was moot, based on fact findings that include the following:

- "UT Austin no longer considers race or ethnicity as a factor in admissions." ROA.2008–09.

- "It is mere conjecture for SFFA to assert that UT Austin still considers race in its admissions practice, and the Court will not give credence to this unsubstantiated contention." ROA.2011.

- "UT Austin changed its admissions policies in response to a change in the law — that is, in the aftermath of the *SFFA v. Harvard-UNC* decision." ROA.2009.

- "The Court finds that UT Austin is especially entitled to a presumption of good faith in light of the dramatic changes to affirmative action precedent that necessitated changes to its admissions policy." ROA.2010.

Having found that the case is moot and that the voluntary cessation exception to mootness did not apply, the district court rendered a final judgment dismissing the suit. ROA.2014.

## SUMMARY OF THE ARGUMENT

SFFA brought this suit in 2020 to end UT Austin's limited consideration of race in undergraduate admissions, a practice which the Supreme Court had upheld as lawful four years earlier in *Fisher II*. But in June 2023, in a separate case brought by SFFA, the Supreme Court ruled that Harvard and the University of North Carolina's use race in admissions was unlawful. *SFFA*, 600 U.S. at 181. In direct response to that ruling, the Board of Regents of the University of Texas System repealed a rule that had allowed UT System component institutions to consider race as a factor in admissions, and UT Austin revised its admissions policies to remove any consideration of race or ethnicity from undergraduate admissions.

The Board and UT Austin established below that these revised admissions policies bar any consideration of race as a factor in admissions. Relying on this unrebutted evidence, the district court found the case to be moot because the policy changes that the Board and UT Austin made to comply with the *SFFA* decision accomplished the goal of SFFA's lawsuit: removing the consideration of race from UT Austin's undergraduate admissions program.

SFFA does not challenge the evidence documenting UT Austin's policy changes; instead, SFFA argues that UT Austin must make additional prophylactic policy changes based on the unwarranted assumption that UT Austin's admissions officers and employees will disregard the university's express policies prohibiting consideration of race. The Court should reject SFFA's entreaties to ignore the unrebutted evidence of UT Austin's policy changes, distort the Supreme Court's *SFFA* decision, and rewrite decades of mootness precedent.

## STANDARD OF REVIEW

"When reviewing a dismissal for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo.*" *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 336 (5th Cir. 2012); *see also Hooks v. Landmark Indus., Inc.*, 797 F.3d 309 (5th Cir. 2015) (reviewing findings of fact supporting mootness for clear error).

An appellate court "must accept the district court's [factual] findings unless they are 'clearly erroneous.'" *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) (quoting *McLain v. Real Estate Bd. of New Orleans, Inc.*, 583 F.2d 1315, 1322–23 (5th Cir. 1978)); *see also Flores v. Pompeo*, 936 F.3d 273, 276 (5th Cir. 2019) ("We are deferential to the district court's jurisdictional findings of fact, which we review for clear error."). A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

# ARGUMENT

SFFA seeks declaratory and injunctive relief to prohibit UT Austin from using a prior admissions policy that UT Austin stopped using two years ago, and to prevent its admissions officers from using information on the race and ethnicity of applicants that UT Austin already expressly prohibits its admissions officers from considering in the admission process. The district court properly determined this case is moot, relying on unrebutted evidence that, following the *SFFA* decision in 2023, UT Austin changed its undergraduate admissions policies to prohibit any consideration of race or ethnicity in admissions. Because UT Austin's policy change was made in compliance with a decision of the U.S. Supreme Court, the "voluntary cessation" exception to mootness does not apply. Accordingly, the judgment of dismissal should be affirmed.

## I.     This case became moot in 2023 when UT Austin ceased considering race in admissions to comply with the U.S. Supreme Court's decision in *SFFA*.

In response to the U.S. Supreme Court's decision in *SFFA v. Harvard*, UT Austin promptly revised its admissions policies to eliminate the consideration of race or ethnicity in undergraduate admissions decisions. Citing the *SFFA* ruling, the UT System Board of Regents repealed the regents' rule that had previously allowed the consideration of race in admission by institutions in the University of Texas system. As a result, SFFA's suit challenging the use of race in UT Austin's prior admissions process became moot.

"The doctrine of mootness arises from Article III of the Constitution, which provides federal courts with jurisdiction over a matter only if there is a live 'case' or 'controversy.'" *Dierlam v. Trump*, 977 F.3d 471, 476 (5th Cir. 2020) (citing *DaimlerChrysler*

*Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). "'There must be a case or controversy through all stages of a case' — not just when a suit comes *into* existence but *throughout* its existence." *Yarls v. Bunton*, 905 F.3d 905, 909 (5th Cir. 2018) (quoting *K.P. v. LeBlanc*, 729 F.3d 427, 438 (5th Cir. 2013)). Accordingly, "any set of circumstances that eliminates actual controversy after the commencement of a lawsuit renders that action moot." *DeOtte v. Nevada*, 20 F.4th 1055, 1064 (5th Cir. 2021) (quoting *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006)).

### A. UT Austin no longer considers race in admissions decisions.

The district court found that "UT Austin no longer considers race or ethnicity as a factor in admissions." ROA.2008–09. That finding — supported by the declaration of Dr. Miguel Wasielewski, UT Austin's Vice Provost for Admissions — is not clearly erroneous. Dr. Wasielewski, an official responsible for developing and implementing UT Austin's undergraduate admissions policy, detailed specific changes that UT Austin made to eliminate race and ethnicity as a factor in admissions after *SFFA*.

### 1. UT Austin removed applicants' responses to the "checkbox" prompt from application files.

State law requires UT Austin to use an application form that includes a prompt asking applicants to identify their race and ethnicity. Tex. Educ. Code § 51.762(a)(1)(A); 19 Tex. Admin. Code § 4.10(c)(1)(A). Responses to this prompt are referred to as "checkbox" data because the prompt includes a list of racial and ethnic categories used by the U.S. Census Bureau. ROA.1954. Providing this information is voluntary — that is, students are not required to identify their race or ethnicity in response to the prompt to submit a complete application for admission to UT Austin. ROA.1658. But Texas

law requires UT Austin to collect any responses to this prompt and report the data to the Texas Higher Education Board. Tex. Educ. Code § 51.762(a).

Following *SFFA*, UT Austin made a policy decision to remove any checkbox information from each application file before it is reviewed by individuals who are evaluating the applicant for admission. UT Austin still maintains this demographic data to comply with state-law reporting requirements and to assist in the recruitment of admitted students. ROA.1659; ROA.1955. But "[t]he checkbox data is not part of the holistic review file that is furnished in connection with holistic review scoring, and does not play a role in any other part of the process for deciding whether to grant or deny admission to a student." ROA.1954.

### 2. UT Austin eliminated "race and ethnicity" as a subfactor in holistic review.

UT Austin provides holistic file reviewers with a written rubric to guide their scoring of the application. ROA.1659. Before *SFFA*, "race and ethnicity" was listed in the rubric as a subfactor of "special personal circumstances" that could be considered to put an applicant's academic achievements in context. ROA.1659. Following *SFFA*, UT Austin removed the "race and ethnicity" subfactor from the rubric and now instructs file reviewers that an applicant's race or ethnicity may not be considered in assigning a holistic review score. ROA.1659. As a result, "UT Austin no longer considers an applicant's race and ethnicity as part of the process for making admissions decisions for individual applicants." ROA.1659.

### 3. UT Austin trained file reviewers how to handle applicants' unsolicited disclosure of race and ethnicity information.

UT Austin's application includes essay prompts that allow an applicant to write about themselves and their life experiences. ROA.1660. An applicant's file may also contain letters of recommendation or other materials that discuss the applicant's background. ROA.1660. Although UT Austin does not use these materials to solicit information about applicants' race or ethnicity, it is possible that applicants may nonetheless choose to mention or discuss their race or ethnicity in an essay or in other supplemental application materials. UT Austin instructs its holistic file reviewers that if any application materials disclose the applicant's race or ethnicity, the reviewer may not consider that information as a positive or negative factor in assigning a score to the application. ROA.1660–61. Based on guidance from the majority opinion in *SFFA*, UT Austin trains its file reviewers on the appropriate way to handle the self-disclosure of an applicant's race or ethnicity. *See SFFA*, 600 U.S. at 230 ("[N]othing in this opinion should be construed as prohibiting universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise."). Hypothetical examples from the training materials include:

> If an applicant writes an essay about overcoming racial discrimination, the reviewer could give positive consideration to something that the experience reveals about their personal character (such as motivation or maturity or adaptability), but the reviewer could not give any positive or negative considerations to the fact that the applicant is of a particular race.

> If an applicant's essay discusses their role in an organization centered around race (Hispanic Students Association, for example), the reviewer might give positive consideration to the applicant's activities or achievements within the organization (awards, leadership experience, impactful community projects), but could not give the applicant any

bonus simply for identifying as a member of a particular racial group or race-centered organization.

ROA.1661–62; *see SFFA* at 230–31 ("A benefit to a student who overcame racial discrimination, for example, must be tied to *that student's* courage and determination. Or a benefit to a student whose heritage or culture motivated him or her to assume a leadership role or attain a particular goal must be tied to *that student's* unique ability to contribute to the university."). Holistic file reviewers are instructed "to focus on the nature and extent of an applicant's individual achievements, not the applicant's race and ethnicity." ROA.1662.

### 4. UT Austin is using supervision and review of its admissions process to ensure compliance with the *SFFA* decision.

UT Austin's Office of Admissions has a process to supervise the scoring of applications during the admissions cycle to ensure consistent scoring and compliance with the office's policies. As part of this quality control process for the Fall 2023 admissions cycle, the Office of Admissions began to "monitor file reviewers to ensure compliance with the recent changes to its admissions policies on race and ethnicity." ROA.1662. And after the cycle, UT Austin committed to reviewing the implementation of all of these new policies "to ensure that race and ethnicity are not considered as a factor in UT Austin's undergraduate admissions." ROA.1662.

### B. The Board of Regents no longer allows its component institutions to consider race and ethnicity in admissions.

The governance of the University of Texas system is vested in the Board of Regents. Tex. Educ. Code § 65.11. The Board "is authorized and directed to govern,

operate, support, and maintain each of the component institutions" in the system, including UT Austin. *Id.* § 65.31.

Before *SFFA*, the Board of Regents had a rule that authorized its component institutions to use race and ethnicity in admissions decisions consistent with then-existing Supreme Court precedent: "Each institution is authorized to develop and propose plans regarding whether to consider an applicant's race and ethnicity, as part of the institution's admissions or financial assistance policies, in accordance with the standards enunciated in the United States Supreme Court cases of *Grutter v. Bollinger* and *Gratz v. Bollinger."* ROA.1939. In August 2023, the Board voted to repeal this rule "based upon the June 29, 2023, United States Supreme Court decision prohibiting the use of race as a factor in student admissions." ROA.1945.

**C. These policy changes mooted SFFA's claims for prospective relief.**

SFFA sought only prospective relief in this suit: declaratory relief that UT Austin's admissions policies are unlawful by allowing the consideration of race and ethnicity as a factor, and a permanent injunction restraining UT Austin from using race as a factor in undergraduate admissions decisions and learning the race of applicants during the admissions process. ROA.228. Those claims for prospective relief are now moot, because UT Austin no longer considers an applicant's race and ethnicity as a factor in admissions and prohibits its officers and employees from accessing information on the race and ethnicity of applicants for use in the admissions process. *See, e.g.*, *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 590 U.S. 336, 338 (2020) (per curiam) (request for preliminary injunction barring enforcement of rule moot after City amended rule); *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 635 (5th Cir. 2023) (en

banc) (changes to challenged bail practices in response to new law rendered case moot despite plaintiff's claims that practices remained unconstitutional), *cert. denied*, 144 S. Ct. 548 (2024). SFFA did not seek monetary damages or other retrospective relief for any harm caused by UT Austin's past admissions policies, nor did SFFA seek to amend its complaint to challenge any aspect of UT Austin's new admissions policies. Accordingly, the district court properly dismissed all claims for want of jurisdiction.

Focusing on UT Austin's handling of the "checkbox" demographic data from the Common App or Apply Texas, SFFA contends that this case is not moot. Although UT Austin removes this data from the application file and prohibits its employees from considering this data in making admissions decisions, SFFA hypothesizes that an individual employee in UT Austin's admissions office could access and use the checkbox data in an impermissible way during the admissions process. But the unrebutted testimony of UT Austin's Vice Provost of Admissions confirmed that the checkbox data does not play any role in admissions decisions:

- "The checkbox data is not part of the holistic review file that is furnished in connection with holistic review scoring, and does not play a role in any other part of the process for deciding whether to grant or deny admission to a student." ROA.1954.

- "It would be a violation of UT's policies and training for anyone to access an applicant's checkbox data when reviewing an individual's file during holistic review." ROA.1955.

- "[I]t would be a violation of UT's policies and training for any employee to access that [checkbox] information when reviewing a file during holistic review or otherwise use the checkbox data to assess an applicant for admission." ROA.1955.

- "UT Austin retains the checkbox data on the race and ethnicity of applicants solely for purposes other than admissions decisions." ROA.1955.

SFFA relatedly complains that UT Austin does not restrict admissions officers' access to a "dashboard" of aggregated demographic information on students who apply, are admitted, and are enrolled at the school, which can be filtered by race and ethnicity.[4] The unrebutted evidence showed that "[t]he dashboard does not play a role in assessing any individual student's application for admission." ROA.1956. UT Austin is required by law to collect and report information "describing the composition of the institution's entering class of students," "including a breakdown by race, ethnicity, economic status, and high school class standing." Tex. Educ. Code § 51.4032; *see also* 19 Tex. Admin. Code § 4.10(e)(2) ("Each general academic teaching institution, public community college, public state college, and public technical institute shall collect information regarding gender, race/ethnicity, and date of birth as part of the application process and report this information to the Coordinating Board. Common application forms do not have to be the source of those data."). SFFA inaccurately contends that "UT has never provided an answer for why" its admissions office continues to collect race and ethnicity information, *see* SFFA Br. at 1, but its own summary judgment evidence directly answers that question: the collection and reporting of this information is required by Texas law and used in outreach to admitted students to encourage them to enroll. ROA.1778–79.

---

[4]     The demographic dashboard data for applied, admitted, and enrolled students for schools in the University of Texas System is published on the UT System website: https://data.utsystem.edu/data-index/applied-admitted-enrolled. SFFA's summary judgment evidence includes a screenshot of this dashboard data. ROA.1844.

Reviewing this evidence, the district court rejected SFFA's contention that the checkbox data and demographic dashboard play a role in admissions decisions: "It is mere conjecture for SFFA to assert that UT Austin still considers race in its admissions practice, and the Court will not give credence to this unsubstantiated contention." ROA.2011. The district court found instead that "UT Austin has a new admissions policy not to consider race or ethnicity as a factor in the admissions process, which it began using during the fall 2023 admissions cycle"; that "UT Austin has instructed its admissions officers and employees accordingly"; and that UT Austin has "created new processes to train and supervise its admissions officers and employees to ensure that they do not consider race or ethnicity as a factor in the admissions process." ROA.2008–09. Those findings are not clearly erroneous (SFFA does not even argue otherwise), and they squarely foreclose SFFA's attempts to forestall mootness based on its speculation regarding possible future events. *See Ashcroft v. Mattis*, 431 U.S. 171, 173 n.2 (1977) ("[S]peculation is insufficient to establish the existence of a present, live controversy."); *see also Harris v. Univ. of Massachusetts Lowell*, 43 F.4th 187, 195 (1st Cir. 2022) ("[A]voiding mootness cannot rest on 'speculation' about some future potential event.").

The *SFFA* decision addressed "whether a university may make admissions decisions that turn on an applicant's race." *SFFA*, 600 U.S. at 208. It does not prohibit universities from collecting data on the race and ethnicity of applicants, nor from using it for purposes other than making admissions decisions. To the extent SFFA is now complaining that UT Austin uses this demographic information for purposes other than making admissions decisions, its live pleading, ROA.180–230, does not support that

allegation. *See Tex. Office of Pub. Util. Counsel v. F.C.C.*, 183 F.3d 393, 414 (5th Cir. 1999) ("We cannot assume jurisdiction to decide a case on the ground that it is the *same* case as one presented to us, when it is admitted that it is not and when it presents different issues."); *Allied Home Mortg. Corp. v. U.S. Dep't of Hous. & Urban Dev.*, 618 Fed. Appx. 781, 787 (5th Cir. 2015) (per curiam) ("The potential for a future dispute of another nature, presenting other issues, is immaterial. Should such a subsequent dispute arise, it is a matter for another lawsuit, not a reason to keep this one alive.").

### D. The "voluntary cessation" exception to mootness does not apply because these policy changes were compelled by a change in the law and made in good faith.

"[A]s a general rule, "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.*, does not make the case moot." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979). The purpose of the voluntary cessation exception is to prevent defendants from engaging in legal gamesmanship: "If defendants could eject plaintiffs from court on the eve of judgment, then resume the complained-of activity without fear of flouting the mandate of a court, plaintiffs would face the hassle, expense, and injustice of constantly relitigating their claims without the possibility of obtaining lasting relief." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 324 (5th Cir. 2009), *aff'd*, 563 U.S. 277 (2011). "Essentially, the goal is to determine whether the defendant's actions are 'litigation posturing' or whether the controversy is actually extinguished." *Yarls*, 905 F.3d at 910.

The "voluntary cessation" exception does not apply here because UT Austin's changes were not a litigation tactic, but instead a good-faith effort to comply with an intervening change in the law announced by the Supreme Court. *See, e.g., Amawi v.*

*Paxton*, 956 F.3d 816, 821 (5th Cir. 2020) ("The very process of the enactment of H.B. 793 by the state legislature and governor, combined with the presumption of good faith that we afford government actors, overcomes concerns of voluntary cessation.").

As the district court found, the Supreme Court's decision in *SFFA* compelled UT Austin to change its admission policies: "UT Austin changed its admissions policies in response to a change in the law — that is, in the aftermath of the *SFFA v. Harvard-UNC* decision." ROA.2009. This finding is not clearly erroneous, as it is undisputed that *SFFA* changed what was legally permissible in the admissions process. *See, e.g., Hamilton v. Dallas Cty.*, 79 F.4th 494, 508 (5th Cir. 2023) (en banc) (Ho, J., concurring) (recognizing that "[f]or decades," the Supreme Court "allowed colleges and universities to consider race in deciding which students to admit — and which students to deny," but in *SFFA*, "the Court . . . prohibited colleges and universities from discriminating on the basis of race"). As SFFA itself recognizes, the *SFFA* decision caused universities across the country to change their admissions policies to conform to the new law. SFFA Br. at 1 ("In response [to the *SFFA* decision], universities across the country began reforming their admissions process to comply with the Constitution."). UT Austin's revisions to its admissions policies were likewise a direct response to *SFFA*, not some cynical litigation tactic.

This Court and others have recognized that a policy change prompted by an intervening change in the governing law does not fall within the "voluntary cessation" exception. In *Daves v. Dallas County, Texas*, for example, this Court found a challenge to a county's bail system moot after the Texas Legislature passed a law changing the applicable bail procedures, holding: "Voluntary cessation is not involved here." 64 F.4th

at 634; *see also Lowery v. Tex. A&M Univ.*, 696 F. Supp. 3d 272, 280 (S.D. Tex. 2023) (citing *Daves* for the proposition that "[r]ecent precedent from the Fifth Circuit makes clear that change compelled by force of law isn't voluntary"), *aff'd*, No. 23-20481, 2024 WL 4614714 (5th Cir. Oct. 30, 2024) (per curiam).

Although *Daves* concerned a policy change implemented in response to a change in statutory law, rather than judicial precedent, the Supreme Court's new interpretation of a federal statute or constitutional provision is just as binding on a university as a new statute or regulation, as other courts have recognized. *See, e.g., Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 307 (3d Cir. 2020) ("Once the Supreme Court changed course in *Janus* [*v. Am. Fed'n of State, Cty., & Mun. Employees*, 585 U.S. 878 (2018)], the unions immediately stopped collecting agency fees. . . . So we see no reasonable likelihood that the unions will try to collect agency fees from the teachers ever again."); *Telco Commc'ns, Inc. v. Carbaugh,* 885 F.2d 1225, 1230–31 (4th Cir. 1989) (declaring case moot because there was no reasonable expectation that Virginia would resume enforcing the challenged statute in light of a Supreme Court decision striking down a similar statute); *see also Diamond v. Pa. State Educ. Ass'n*, 399 F. Supp. 3d 361, 387 (W.D. Pa. 2019) ("Complying with a Supreme Court decision cannot be considered 'voluntary cessation.'"), *aff'd*, 972 F.3d 262 (3d Cir. 2020).

More broadly, this Court has recognized that, "[w]ithout evidence to the contrary," courts presume that "formally announced changes to official governmental policy are not mere litigation posturing." *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 630 (5th Cir. 2023). Here, the Board of Regents formally repealed the rule that had, consistent with then-applicable Supreme Court precedent, authorized UT System

institutions to consider race as a factor in admissions. UT Austin is not free to return to an admissions policy that considers race, both because the Supreme Court's decision in *SFFA* prohibits it and the Board of Regents' rules no longer allow it.

Another district court reached a similar conclusion in addressing a challenge to the admissions policies of Texas public medical schools. In *Stewart v. Tex. Tech University Health Sciences Center*, No. 5:23-CV-007-H, 2024 WL 4996604 (N.D. Tex. July 17, 2024), the plaintiff sued six medical schools, including five in the UT system, alleging that their admissions policies unlawfully discriminated on the basis of race. Relying on *SFFA* and the Board of Regents' repeal of the former rule that had previously permitted consideration of race in admissions, the UT medical schools argued that the plaintiff's claims for prospective relief were moot because, even though prior Supreme Court precedent had allowed limited consideration of race in admissions, any future consideration of race in admissions decisions was prohibited. *See id.* at *6 ("UT asserts that the Rule was the only policy allowing the defendant medical schools to consider race in admissions and that, after its repeal, the medical schools cannot and will no longer use race as a factor in admissions decisions."). The district court concluded that the UT medical schools had met their "burden of showing that the UT defendants no longer consider race in admissions, even under the voluntary cessation standard." *Id.* at *7. The same is true here.

"Litigation posturing typically involves some sign of bad faith or insincerity." *U.S. Navy SEALs 1–26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023). For example, a government's professed cessation of conduct cannot moot a case when the government "repeatedly exhibited gamesmanship in its decisionmaking" by hiding evidence and

engaging in "eleventh-hour" policy changes. *Texas v. Biden*, 20 F.4th 928, 962–64 (5th Cir. 2021), *rev'd on other grounds*, 597 U.S. 785 (2022); *see also Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 284 (5th Cir. 2012) (finding case not moot when defendant city amended the challenged law "the night before oral argument").

There is no such evidence in this record. When SFFA joined UT Austin in moving to stay the district-court proceedings following the Supreme Court's decision to grant certiorari in the *SFFA* cases involving Harvard and UNC, SFFA recognized that "it is highly likely that the [*SFFA*] decisions will affect the disposition of this litigation." ROA.1590. SFFA further stated that a decision "hold[ing] that institutions of higher education cannot use race as a factor in admissions . . . will fully resolve one of SFFA's claims" in this case. ROA.1590. In short, SFFA itself recognized that its victory in *SFFA* would effectively dispose of this case.

The timing of UT Austin's policy changes was dictated by the timing of the Supreme Court's decision in *SFFA,* and following *SFFA,* UT Austin is not seeking to defend the limited consideration that was given to race under its pre-*SFFA* admissions policy. As the district court found, UT Austin's change in policy was a necessary, good-faith change prompted by a change in the law: "The Court finds that UT Austin is especially entitled to a presumption of good faith in light of the dramatic changes to affirmative action precedent that necessitated changes to its admissions policy." ROA.2010.

SFFA nevertheless argues that this Court should abandon the longstanding presumption of good faith afforded to government actors, based on the following language from a recent Supreme Court opinion: "To show that a case is truly moot, a

defendant must prove no reasonable expectation remains that it will return to its old ways. That much holds for governmental defendants no less than for private ones." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 241 (2024) (cleaned up); *see* SFFA Br. 23. *The Fikre* opinion does not reject — or even discuss — the presumption that a government actor acts in good faith. The issue in *Fikre* was not whether the government's announced changes were made in good faith, but instead whether they were sufficient to moot the controversy. *See id.* at 242 (accepting "as true the supplemental evidence the government offered," but concluding "the government's sparse declaration falls short of demonstrating that it cannot reasonably be expected to do again in the future what it is alleged to have done in the past.").

*Fikre* does no more than restate existing law on a defendant's heavy burden to establish mootness, a burden which this Court has already reconciled with the presumption of good faith afforded government actors:

> Although [*Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167 (2000)] establishes that a defendant has a heavy burden to prove that the challenged conduct will not recur once the suit is dismissed as moot, government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties. Without evidence to the contrary, we assume that formally announced changes to official governmental policy are not mere litigation posturing.

*Sossamon*, 560 F.3d at 325. And as SFFA acknowledges (at 23 n.3), this Court has continued to apply the presumption of good faith even after *Fikre. Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 395-96 (5th Cir. 2024). There is thus no cause for this Court to revisit its precedent on this issue in this case.

SFFA also argues that the presumption of good faith should not apply to a public university such as UT Austin. SFFA Br. at 23 (citing *Speech First, Inc. v. Fenves,* 979 F.3d 319, 328 (5th Cir. 2020)). But in *Speech First,* a panel of this Court assumed that the presumption applied to the former president of UT Austin. 979 F.3d at 328. And SFFA does not point to any cases — in this Circuit or elsewhere — holding that public universities are excluded from the presumption.

Moreover, the presumption of good faith is based on a governmental entity or official's role as a representative of the public interest generally, not its particular title or function. *See Freedom From Religion Found., Inc. v. Abbott,* 58 F.4th 824, 832, 833 (5th Cir. 2023). There is no question that UT Austin is a public representative of the State, and the Board of Regents are officials appointed by the Governor and confirmed by the Senate. *See* Tex. Const. art. VII, § 10; Tex. Educ. Code § 65.11. As such, the changes in admissions policy announced by UT Austin and the Board of Regents should be afforded the presumption that they were made in good faith, just as with any other government body.

SFFA has produced no evidence whatsoever to overcome the presumption of good faith. SFFA argues only that UT Austin should implement more procedural safeguards to ensure that admissions officers do not — contrary to UT Austin's express policy — use applicants' racial data to make admissions decisions. But "speculation is insufficient to satisfy the voluntary-cessation exception." *Freedom From Religion Found., Inc.,* 58 F.4th at 834. Nothing in the record suggests that any admissions officer has violated or will violate UT Austin's color-blind admissions policy, or that UT Austin will reimplement its previous race-conscious admissions policy. *See id.* at 833 ("We

conclude that the voluntary-cessation exception to mootness does not apply here because nothing in the record suggests that the Board will reimplement the Capitol Exhibit Rule."). To the contrary, UT Austin's history of revising its admissions policy to comply with decisions of the Fifth Circuit and the U.S. Supreme Court — eliminating consideration of race following *Hopwood v. Texas,* 78 F.3d 932 (5th Cir. 1996)), reintroducing race as a subfactor following *Grutter v. Bollinger,* 539 U.S. 306 (2003), and again eliminating consideration of race in the wake of *SFFA* — demonstrates UT Austin's commitment to follow the governing law as it has evolved over time.

Moreover, SFFA's insistence on more procedural safeguards to prevent the possibility of admissions officers learning racial information about applicants is undercut by the Supreme Court's recognition in *SFFA* that some applicants may choose to discuss in application essays how their personal characteristics (including race) affected their lives — and that universities may consider such writings in evaluating the applicant, provided that they do not reward or penalize applicants based on their race or ethnicity. *See SFFA*, 600 U.S. at 230 ("[N]othing in this opinion should be construed as prohibiting universities from considering an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise."). SFFA's insistence on prophylactic safeguards to prevent admissions officers from learning an applicant's race is inconsistent with the Supreme Court's decision in *SFFA*.[5]

---

[5] After quoting this passage from *SFFA*, ROA.2007, the district court recognized that, "based on guidance provided by the Supreme Court in the *SFFA* majority opinion, reviewers have been trained on how to appropriately handle an applicant's self-disclosure of race or ethnicity in essays or other file materials, including that the reviewer may not consider the applicant's race or ethnicity as a positive or negative factor." ROA.2008 (quoting ROA.1657, Decl. of Miguel Wasielewski at 4). These training materials are discussed above, *see supra* at 23–24, and appear in the record at ROA.1679–89.

Accordingly, the voluntary cessation exception to mootness does not apply, and this Court should affirm the judgment of dismissal.

## II. SFFA is not entitled to summary judgment.

SFFA asks this Court to render judgment in its favor and issue a permanent injunction enjoining UT Austin's past and current admissions policies. There is no cause for this Court to review this request because the district court below never ruled on SFFA's motion for summary judgment. Alternatively, SFFA is not entitled to relief for essentially the same reasons that this case is moot: UT Austin has abandoned its previous admissions policy and adopted a new policy that expressly forbids the consideration of race.

### A. Because the district court did not rule on SFFA's motion, this Court should not review it on appeal.

"As a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.'" *PHH Mort. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023) (quoting *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022)). The district court expressly declined to reach the merits of SFFA's motion for summary judgment, ROA.2004; ROA.2014, and so this Court should not reach the merits on appeal. "The special circumstances in which a federal appellate court is justified in resolving an issue not passed on below include those in which the proper resolution is beyond any doubt and those in which injustice might otherwise result." *PHH Mort. Corp.*, 80 F.4th at 563 (quotations omitted). No such circumstances exist here.

**B.    SFFA is not entitled to declaratory or injunctive relief.**

If this Court were to reach the merits of SFFA's motion for summary judgment, the Court should deny SFFA the relief it seeks.

First, there is no basis to enjoin UT Austin's *past* admissions policies that are no longer in effect. Past violations cannot support an injunction absent a showing of "continuing injury or threatened future injury," as opposed to "a past one." *Book People, Inc. v. Wong*, 91 F.4th 318, 328 (5th Cir. 2024). SFFA has made no such showing here — and an admissions policy that UT Austin has abandoned cannot possibly cause "continuing injury" or a threat of "future injury." For the same reasons, declaratory relief is unavailable when the alleged injury occurred in the past with no showing of continuing or future harm. *See Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) (en banc).

Second, SFFA is not entitled to an injunction regarding UT Austin's current admissions policy because SFFA failed to carry its summary judgment burden to show that the current policy discriminates on the basis of race. SFFA's argument rests not upon any evidence, but instead upon the unwarranted assumption that UT Austin or its employees will disregard UT Austin's admissions policy, access data on the race and ethnicity of individual applicants, and use that information to make admissions decisions in direct contravention of university policy. As discussed above, SFFA's unsupported presumptions are no evidence that UT Austin's admissions policies are unlawful. To the contrary, the undisputed evidence shows that UT Austin has trained its officers and employees not to consider race as a factor in admissions decisions, has a process to supervise file reviewers to ensure compliance with its admissions policies,

and conducts a review after the admissions cycle to "make any changes necessary to those policies or the training and supervision of Office of Admissions staff to ensure that race and ethnicity are not considered as factors in UT Austin's undergraduate admissions." ROA.1662. There is no cause to enjoin UT Austin to compel compliance with its current admissions policies when SFFA has provided no evidence that admissions staff are disregarding them.

SFFA cites *United States v. Fordice*, 505 U.S. 717, 734 (1992) for the proposition that, despite SFFA's failure to provide any evidence of unlawful admissions practices, this Court should nevertheless enjoin UT Austin's facially nondiscriminatory admissions policy. SFFA Br. 27. But this case is nothing like *Fordice*. In *Fordice*, the State of Mississippi maintained *de jure* segregation for years after the Supreme Court's decision in *Brown v. Board of Education* decision, in defiance of that ruling. After Mississippi eventually adopted facially race-neutral admissions practices, but with the intention of maintaining *de facto* segregation. *Id.* at 731. By contrast, this case never involved allegations about segregation but instead addressed only the lawfulness of a race-conscious admissions program to promote diversity; UT Austin's prior admissions program was upheld by the Supreme Court in *Fisher II*; UT Austin promptly revised its admissions process to remove race as a factor in admissions decisions following the *SFFA* decision; and SFFA has not even alleged (much less offered evidence to conclusively prove) that UT Austin's current admissions policies are traceable to a *de jure* system of discrimination, were adopted for a discriminatory purpose, or have present discriminatory effects.

Nor is this case like *United States v. Fletcher ex rel. Fletcher*, 805 F.3d 596, 601 (5th Cir. 2015), which SFFA repeatedly cites for the proposition that UT Austin bears a burden of demonstrating "every reasonable effort . . . to eradicate [*de jure* racial discrimination] and its insidious residue.'" SFFA Br. at 13. But SFFA's brackets in the quotation obscure the crucial fact that, like *Fordyce*, *Fletcher* was a case about segregation, and therefore "guided by well-established desegregation principles." *Fletcher*, 805 F.3d at 601. The "every reasonable effort" test discussed in *Fletcher* for determining whether an institution has become unitary (*i.e.*, when it has overcome the effects of past segregation) has not been applied outside of the desegregation context. SFFA has not even suggested (let alone shown) that UT Austin's prior admissions policy ever had a segregating effect, nor has SFFA produced any summary judgment evidence that UT Austin's prior admissions policy has any present or continuing harmful effects in the current system.

Accordingly, the Court should deny SFFA's request for summary judgment implementing injunctive and declaratory relief.

## CONCLUSION AND RELIEF REQUESTED

The district court's judgment should be affirmed.

Respectfully submitted,

GRAVES, DOUGHERTY,
HEARON & MOODY, P.C.
401 Congress Avenue, Suite 2700
Austin, TX 78701
Telephone: (512) 480-5600
Facsimile: (512) 480-5804

By: /s/ Matthew C. Powers
     Matthew C. Powers
     Texas State Bar No. 24046650
     William Christian
     Texas State Bar No. 00793505
     Marianne W. Nitsch
     Texas State Bar No. 24098182

**COUNSEL FOR UT AUSTIN, ET AL.
DEFENDANTS-APPELLEES**

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 28(c)(2)(i) because it contains 7,458 words, excluding the parts exempted by Rule 32(f) and Fifth Circuit Rule 32.2; and (2) the typeface and type style requirements of Rule 32(a)(5) because it has been prepared in proportionally spaced typeface (14-point Garamond). Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of a commercial virus scanning program and is free of viruses.

*/s/Matthew C. Powers*

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on January 15, 2025, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/Matthew C. Powers*