# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

Students for Fair Admissions, Incorporated,
    *Plaintiff - Appellant*

v.

University of Texas at Austin; James B. Milliken, Chancellor of the University of Texas System in his Official Capacity; Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity; Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity; Jay Hartzell, Interim President of the University of Texas at Austin in his Official Capacity; Board of Regents of the Texas State University System; David J. Beck, Member of the Board of Regents in his Official Capacity; Christina Melton Crain, Member of the Board of Regents in her Official Capacity; Kevin P. Eltife, Member of the Board of Regents in his Official Capacity; R. Steven Hicks, Member of the Board of Regents in his Official Capacity; Jodie Lee Jiles, Member of the Board of Regents in his Official Capacity; Janiece Longoria, Member of the Board of Regents in her Official Capacity; Nolan Perez, Member of the Board of Regents in his Official Capacity; Kelcy L. Warren, Member of the Board of Regents in his Official Capacity; James C. (Rad) Weaver, Member of the Board of Regents in his Official Capacity; Daniel Jaffe, Interim Executive Vice President and Provost; Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success; Miguel Wasielewski, Executive Director for Office of Admissions,
    *Defendants - Appellees*

Black Student Alliance, Texas Orange Jackets, Texas NAACP, Adaylin Alvarez, Morgan Bennett, Liz Kufour, Brianna Mallorie McBride, Desiree Ortega-Santiago, Nima Rahman, Alexandra Trujillo, Rosaleen Xiong,
    *Intervenor Defendants - Appellees*

On Appeal from the United States District Court for the Western District of Texas, Austin Division, Civil Action No. 1:20-cv-00763

# BRIEF OF STUDENT INTERVENOR-APPELLEES

[Counsel listed on following page]

SUMAYYA SALEH
MAYA BRODZIAK
DARIELY RODRIGUEZ
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, D.C. 20005
(202) 662-8600

ALAN R. KABAT
BERNABEI & KABAT, PLLC
1400 16th Street NW, Suite 500
Washington, D.C., 20036
(202) 745-1942

*Attorneys for Student Intervenor-Appellees*

# CERTIFICATE OF INTERESTED PERSONS

No. 24-50631

*Students for Fair Admissions, Inc. v. University of Texas at Austin, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

## *Plaintiff-Appellant*
Students for Fair Admissions, Inc.

## *Attorneys for Plaintiff-Appellant*
CONSOVOY MCCARTHY PLLC
Thomas R. McCarthy
J. Michael Connolly
Cameron T. Norris
Steven C. Begakis

## *Defendants-Appellees*
University of Texas at Austin
James B. Milliken, Chancellor of the University of Texas System in his Official Capacity
Steven Leslie, Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity
Daniel H. Sharphorn, Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity
Jay Hartzell, Interim President of the University of Texas at Austin in his Official Capacity
Board of Regents of the Texas State University System
David J. Beck, Member of the Board of Regents in his Official Capacity
Christina Melton Crain, Member of the Board of Regents in her Official Capacity
Kevin P. Eltife, Member of the Board of Regents in his Official Capacity
R. Steven Hicks, Member of the Board of Regents in his Official Capacity
Jodie Lee Jiles, Member of the Board of Regents in his Official Capacity

Janiece Longoria, Member of the Board of Regents in her Official Capacity
Nolan Perez, Member of the Board of Regents in his Official Capacity
Kelcy L. Warren, Member of the Board of Regents in his Official Capacity
James C. "Rad" Weaver, Member of the Board of Regents in his Official Capacity
Daniel Jaffe, Interim Executive Vice President and Provost
Rachelle Hernandez, Senior Vice Provost for Enrollment Management and Student Success
Miguel Wasielewski, Executive Director for Office of Admissions

***Attorneys for Defendants-Appellees***
GRAVES, DOUGHERTY, HEARON & MOODY, P.C.
Marianne W. Nitsch
Matthew C. Powers
William Christian

***Student Intervenor-Appellees***
Black Student Alliance
Texas Orange Jackets
Texas NAACP
Adaylin Alvarez
Morgan Bennett
Liz Kufour
Brianna Mallorie McBride
Desiree Ortega-Santiago
Nima Rahman
Alexandra Trujillo
Rosaleen Xiong

***Attorneys for Student Intervenor-Appellees***
LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
Sumayya Saleh
Maya Brodziak
Dariely Rodriguez
BERNABEI & KABAT, PLLC
Alan R. Kabat
HICKS THOMAS, L.L.P.
Brian C. Pidcock
HUNTON ANDREWS KURTH, L.L.P.
Neil K. Gilman
Daniel R. Stefany

PAUL HASTINGS L.L.P.
Carter C. Simpson

Respectfully submitted,

*/s/ Maya Brodziak*

*Counsel for Student Intervenor-Appellees*

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Student Intervenor-Appellees believe that the district court's motion to dismiss order can be affirmed exclusively on the briefs, without oral argument. That said, Student Intervenor-Appellees would be pleased to present oral argument if it would aid the Court in the disposition of the appeal.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................. i

STATEMENT REGARDING ORAL ARGUMENT ..................................... iv

TABLE OF AUTHORITIES ......................................................... vii

STATEMENT OF THE ISSUES PRESENTED............................................ 1

STATEMENT OF THE CASE...................................................... 2

I.  UT-Austin Has Historically Used Race in Admissions in a Lawful
    Manner. .............................................................. 2

II.  SFFA Attacked UT-Austin's Lawful Admissions Policy. ..................... 3

III.  In *Harvard*, the Supreme Court Put Limits on Race-Conscious
     Admissions. ......................................................... 5

IV.  UT-Austin Brought its Admissions Policy in Compliance with
     *Harvard*. ............................................................ 7

V.  Based on the Changes UT-Austin Made, the District Court Correctly
    Dismissed This Case As Moot................................................ 9

SUMMARY OF THE ARGUMENT .............................................. 11

ARGUMENT ...................................................................... 13

I.  Introduction............................................................. 13

II.  The District Court Properly Dismissed This Case on Mootness
     Grounds................................................................ 14

     A.  Changes to the Old Policy Moot This Action. ............................ 16

     B.  UT-Austin Satisfies the Voluntary Cessation Exception. ........... 23

III.  SFFA Is Not Entitled to Summary Judgment....................................... 30

     A.  This Court Cannot Reach the Merits of SFFA's Summary
         Judgment Motion in the First Instance........................................ 30

B.     SFFA's Summary Judgment Motion Fails on the Merits. ......... 31

     *i.     SFFA has not met its initial burden for summary judgment as to the constitutionality of UT-Austin's Old Policy. ...... 31*

     *ii.     SFFA is not entitled to summary judgment as to the constitutionality of the New Policy because it has not demonstrated that strict scrutiny applies. ........................ 35*

IV.     SFFA Is Not Entitled to a Permanent Injunction. ................................. 37

CONCLUSION ............................................................................................ 40

CERTIFICATE OF COMPLIANCE ............................................................. 42

CERTIFICATE OF SERVICE ....................................................................... 43

# TABLE OF AUTHORITIES

**Cases**

*Already, LLC v. Nike, Inc.*,
  568 U.S. 85 (2013) .............................................................27

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ..................................... 29, 30

*Amoco Prod. Co. v. Vill. of Gambell*,
  480 U.S. 531 (1987) ..........................................................37

*Anderson v. City of Bessemer City*,
  470 U.S. 564 (1985) ..........................................................14

*Ashcroft v. Mattis*,
  431 U.S. 171 (1977) ..........................................................15

*Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*,
  103 F.4th 383 (5th Cir. 2024) ...........................................26

*Bellard v. Gautreaux*,
  675 F.3d 454 (5th Cir. 2012) .............................................32

*Boudreaux v. La. State Bar Ass'n*,
  86 F.4th 620 (5th Cir. 2023) ....................................... 18, 27

*Calmes v. United States*,
  926 F. Supp. 582 (N.D. Tex. 1996) ...................................37

*Campbell-Ewald Co. v. Gomez*,
  577 U.S. 153 (2016) ................................................... 15, 16

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) ..........................................................31

*Clarke v. Commodity Futures Trading Comm'n*,
  74 F.4th 627 (5th Cir. 2023) .............................................22

*Coker v. Select Energy Servs., LLC*,
    161 F. Supp. 3d 492 (S.D. Tex. 2015)........................................................ 15, 16

*Cooper v. Blair Logistics, LLC*,
    No. 4:22-CV-00230, 2023 WL 2787953 (E.D.Tex. Apr. 5, 2023) ............... 34, 35

*Crocker v. Austin*,
    115 F.4th 660 (5th Cir. 2024) ...............................................................22

*Crown Castle Fiver, L.L.C. v. City of Pasadena*,
    76 F.4th 425 (5th Cir. 2023), *cert.denied*, 144 S. Ct. 820 (2024) ......................38

*Ctr. for Individual Freedom v. Carmouche*,
    449 F.3d 655 (5th Cir. 2006) ...............................................................15

*Dallas Fire Fighters Ass'n v. City of Dallas*,
    885 F. Supp. 915 (N.D. Tex.1995) .......................................................36

*Daves v. Dallas Cnty.*,
    64 F.4th 616 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548 (2024) .... 17, 18, 21, 24

*Deposit Guar. Nat'l Bank v. Roper*,
    445 U.S. 326 (1980) ...........................................................................15

*Diamond v. Penn. State Educ. Ass'n*,
    399 F. Supp. 3d 361 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020) .........24

*Duarte v. City of Lewisville*,
    858 F.3d 348 (5th Cir. 2017) ...............................................................35

*eBay, Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388 (2006) ..................................................................... 38, 39

*Env't Conservation Org. v. City of Dallas*,
    529 F.3d 519 (5th Cir. 2008) ...............................................................38

*FBI v. Fikre*,
    601 U.S. 234 (2024) ...................................................................... 25, 26, 27

*Fisher v. Univ. of Tex. at Austin*,
570 U.S. 297 (2013) ......................................................................2, 3

*Fisher v. Univ. of Tex. at Austin*,
579 U.S. 365 (2016) ......................................................................2, 3

*Freedom From Religion Found., Inc. v. Abbott*,
58 F.4th 824 (5th Cir. 2023) .................................................. 16, 24, 25

*Freedom from Religion Found. v. Abbott*,
955 F.3d 417 (5th Cir. 2020) .................................................. 25, 28, 38

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000) .................................................................... 23, 24

*Funeral Consumers All., Inc. v. Serv. Corp. Intern.*,
695 F.3d 330 (5th Cir. 2012) ....................................................14

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) ...............................................................15

*Grutter v. Bollinger*,
539 U.S. 306 (2003) ......................................................................2, 3

*Haley v. DeSoto Par. Sch. Bd.*,
600 F. Supp. 3d 690 (W.D. La. 2022) .......................................... 37, 38

*Hooks v. Landmark Indus., Inc.*,
797 F.3d 309 (5th Cir. 2015) .................................................... 22, 23

*Hopwood v. Texas*,
78 F.3d 932 (5th Cir. 1996) .................................................................2

*Keelan v. Majesco Software, Inc.*,
407 F.3d 332 (5th Cir. 2005) ....................................................31

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
567 U.S. 298 (2012) .......................................................... 15, 21, 22

*La. Env't Action Network v. U.S. E.P.A.*,
  382 F.3d 575 (5th Cir. 2004) .................................................................15

*Little v. Liquid Air Corp.*,
  37 F.3d 1069 (5th Cir. 1994) ...............................................................31

*Magnolia Island Plantation, L.L.C. v. Whittington*,
  29 F.4th 246 (5th Cir. 2022) ......................................................... 30, 31

*N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*,
  590 U.S. 336 (2020) ...................................................................... 16, 19

*Princeton Univ. v. Schmid*,
  455 U.S. 100 (1982) ............................................................................16

*Regents of Univ. of Cal. v. Bakke*,
  438 U.S. 265 (1978) ..............................................................................2

*Robinson v. City of Garland*,
  No. 3:10-CV-2496-M, 2016 WL 7396048 (N.D. Tex. Aug. 17, 2016)..............32

*Sossamon v. Lone Star State of Tex.*,
  560 F.3d 316 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277
  (2011)...................................................................................................24

*Speech First v. Fenves*,
  979 F.3d 319 (5th Cir. 2020), *as revised* (Oct. 30, 2020) ............................ 26, 27

*Speech First, Inc. v. Schissel*,
  939 F.3d 756 (6th Cir. 2019) ...............................................................28

*Spell v. Edwards*,
  962 F.3d 175 (5th Cir. 2020) ...............................................................16

*Students for Fair Admissions v. U.S. Naval Acad.*,
  No. CV RDB-23-2699, 2024 WL 5003510 (D. Md. Dec. 6, 2024)......................6

*Students for Fair Admission, Inc. v. President & Fellows of Harvard College*,
  600 U.S. 181 (2023) ................................................... 1, 5, 6, 7, 20, 35

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*,
   No. 20-1199 ..........................................................................................5

*Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*,
   37 F.4th 1078 (5th Cir. 2022) ...............................................................5

*Students for Fair Admissions, Inc. v. Univ. of North Carolina at Chapel Hill*,
   No. 21-707 ...........................................................................................5

*U.S. Parole Comm'n v. Geraghty*,
   445 U.S. 388 (1980) ...........................................................................14

*United States v. $92,203.00 in U.S. Currency*,
   537 F.3d 504 (5th Cir. 2008) ...............................................................31

*United States v. Fordice*,
   505 U.S. 717 (1992) ..................................................................... 36, 37

*United States v. U.S. Gypsum Co.*,
   333 U.S. 364 (1948) ...........................................................................14

## Statutes and Other Authorities

19 Tex. Admin. Code § 4.10 ........................................................................21

Fed. R. Evid. 901 .......................................................................................32

*Pre-Employment Inquiries and Race*, U.S. Equal Emp. Opportunity Comm'n,
   perma.cc/3TE5-PUKP (last visited Jan. 15, 2025) ...............................30

Tex. Educ. Code § 51.803 ............................................................................2

Tex. Educ. Code § 51.4032 .................................................................. 20, 21

## STATEMENT OF THE ISSUES PRESENTED

1. Does UT-Austin's adoption of a race-neutral admission policy in response to the Supreme Court's decision in *Students for Fair Admission, Inc. v. President & Fellows of Harvard College* ("*Harvard*"), 600 U.S. 181 (2023), moot this case?

2. Even if this case is not moot, can this Court reach the merits of SFFA's summary judgment motion, when the district court did not rule on it in the first instance?

3. If this Court does choose to reach the merits, is SFFA entitled to either summary judgment or a permanent injunction on a scant but undisputed evidentiary record that shows that UT-Austin no longer considers race in its undergraduate admissions decisions?

**STATEMENT OF THE CASE**

## I.    UT-Austin Has Historically Used Race in Admissions in a Lawful Manner.

UT-Austin has abided by governing law concerning whether and how it can consider race in admission decisions for decades. Before the Fifth Circuit's decision in *Hopwood v. Texas*, 78 F.3d 932 (5th Cir. 1996), holding that racial preferences in higher education admissions were unconstitutional under the equal protection clause, UT-Austin considered race among other factors as permitted under existing precedent. *See Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 304 (2013) ("*Fisher I*"); *see also Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 317-18 (1978) (holding that considering race as one among many factors is permissible under the Fourteenth Amendment). To comply with *Hopwood*, UT-Austin stopped considering race in admissions decisions and instead relied on a new holistic metric of a candidate that did not include race (the Personal Achievement Index), to be used in conjunction with the Academic Index. *See Fisher I*, 570 U.S. at 304.

UT-Austin used this race-neutral admissions policy from 1996 to 2003, alongside the state's Top Ten Percent law implemented in 1998.[1] In 2003, the Supreme Court in *Grutter v. Bollinger* held that "student body diversity is a

---

[1] The Texas Legislature passed the Top Ten Percent Law in 1997, codified as Tex. Educ. Code § 51.803 (West Cum. Supp. 2015), which guarantees admission to public universities in Texas to students who graduate in the top ten percent of their class. *Fisher v. Univ. of Tex. at Austin*, 579 U.S. 365, 372 (2016) ("*Fisher II*").

compelling state interest that can justify the use of race in university admissions."

539 U.S. 306, 325 (2003). With this change in the law, UT-Austin amended its admissions policy to allow for an applicant's race to be one of the factors considered in the holistic Personal Achievement Index (the "2004 Policy"). *See Fisher I*, 570 U.S. at 305-06.

UT-Austin's limited consideration of race under the 2004 Policy then became the subject of a lawsuit by Abigail Fisher in 2008. *Id.* at 300-02. Edward Blum, who would later go on to found SFFA, organized the lawsuit. *See* ROA.810:22-811:15, 864:22-866:13, 902:9-905:15. After eight years of litigation, the Supreme Court upheld UT-Austin's holistic consideration of race in admissions. *Fisher II*, 579 U.S. at 375-76. Accordingly, UT-Austin continued to use race as a factor in its admissions decisions.

## II.   SFFA Attacked UT-Austin's Lawful Admissions Policy.

Ignoring the Supreme Court's endorsement of UT-Austin's admissions policies in *Fisher II*, Mr. Blum continued to look for ways to challenge UT-Austin's consideration of race in admissions decisions. *See* ROA.819:3-11, 826:4-20, 875:12-876:9, 907:9-908:20. A year after *Fisher II*, Mr. Blum, through SFFA, filed in state court the first of three complaints against UT-Austin.[2] *See* ROA.959-80. That action

---

[2] At this point, SFFA had already filed lawsuits against Harvard and the University of North Carolina at Chapel Hill challenging the use of race in their admissions policies.

was dismissed for lack of standing. *See* ROA.981. SFFA brought a second challenge, also in state court, in 2019. *See* ROA.983-1005. SFFA voluntarily dismissed this suit before the court reached UT-Austin's standing and *res judicata* challenges. *See* ROA.1006-08.

Finally, in July 2020, SFFA filed the action below—its third against UT-Austin in as many years. SFFA alleged that the UT-Austin undergraduate admissions policy that was in effect at the time (the "Old Policy") violated the rights of its members under the Equal Protection Clause of the Fourteenth Amendment and Title VI of the Civil Rights Act of 1964. ROA.181. SFFA alleged that, through this admissions policy, UT-Austin (1) failed to use race merely as a plus factor in admissions decisions and failed to continually reevaluate its basis for relying on race; (2) failed to use race-neutral alternatives that could achieve the student body diversity it sought; and (3) engaged in impermissible racial balancing. ROA.219-24. SFFA also brought a claim asking that the Court prohibit "the use of race as a factor in admissions" altogether. ROA.224-28.

On December 16, 2020, a group of eight UT-Austin students of color and three UT-Austin student groups moved to intervene in the action (the "Student Intervenors"). ROA.317-21. The district court granted the motion on January 14, 2021, over SFFA's objection, finding that Student Intervenors were entitled to intervene as of right. ROA.545.

On July 26, 2021, the district court dismissed, with prejudice, SFFA's claims as barred by *res judicata*, based on SFFA's previous challenge to UT-Austin's admissions policy in the *Fisher* case. *See generally* ROA.1529-51. SFFA appealed, and on June 20, 2022, this Court reversed and remanded the case. *See Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1087-90 (5th Cir. 2022). On remand, the parties agreed to stay the case until the Supreme Court decided two other cases SFFA brought challenging other universities' race-conscious admissions programs: *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, No. 20-1199, and *Students for Fair Admissions, Inc. v. University of North Carolina at Chapel Hill*, No. 21-707.

## III.   In *Harvard*, the Supreme Court Put Limits on Race-Conscious Admissions.

The Supreme Court decided both the Harvard and the University of North Carolina cases in a joint opinion on June 29, 2023. *Harvard*, 600 U.S. 181 (2023). In *Harvard*, the Supreme Court held that Harvard's and UNC's race-conscious admissions programs violated the Equal Protection Clause of the Fourteenth Amendment and Title VI. *See id.* at 213. In so ruling, the Supreme Court *did not* hold that all race-conscious admissions programs in higher education are unconstitutional. Rather, the Court reaffirmed the strict scrutiny analysis previously articulated in *Grutter v. Bollinger*, under which a university may consider race in admissions if it has a compelling interest to do so and if its consideration of race is

narrowly tailored to achieve that interest. *See id.* at 206-07. The Court clarified and tightened that framework, however, indicating that a race-conscious admissions program is narrowly tailored only if four criteria are met: (1) there exists a meaningful connection between the means the university employs and the goals it pursues; (2) the program does not use race as a negative; (3) the program's use of race does not reinforce racial stereotypes; and (4) the program has a logical end point. *Id.* at 213-26. Ultimately, the Court concluded that Harvard's and UNC's respective programs did not survive strict scrutiny.

*Harvard* is notable for what it does not foreclose.[3] The decision does not require a completely race-blind admissions process. For example, the ruling does not impact universities' ability to consider racial experiences as part of their admissions programs, holding that universities may consider "an applicant's discussion of how race affected his or her life, be it through discrimination, inspiration, or otherwise." *Id.* at 230. Universities also can continue to assess an applicant's mention of race in essay questions and other parts of an application so long as the applicant is "treated

---

[3] *Harvard* also recognized that its holding did not apply to military institutions because of "the potentially distinct interests that military academies may present." *Harvard*, 600 U.S. at 213 n.4. This carveout strongly suggests that the strict scrutiny analysis for these institutions would be different, a conclusion that was recently recognized in an action challenging the Naval Academy's use of race in admissions. On December 5, 2024, the district court of Maryland issued a decision finding that the U.S. Naval Academy's race conscious admissions policies satisfy strict scrutiny because it has a compelling national security interest in a diverse officer corps and that its race conscious admissions program is narrowly tailored to further that interest. *Students for Fair Admissions v. U.S. Naval Acad.*, No. CV RDB-23-2699, 2024 WL 5003510, at *62-80 (D. Md. Dec. 6, 2024).

based on his or her experiences as an individual—not on the basis of race," *id.* at 231, and the decision does not foreclose universities from continuing to pursue and support diversity through other means, such as adopting race-neutral admissions programs that consider factors like high school class rank, socioeconomic status and wealth, overcoming adversity, and first-generation college student status. *See, e.g.*, *id.* at 284 (Thomas, J., concurring); *id.* at 317 (Kavanaugh, J., concurring). The *Harvard* decision also affirmed that that "remediating specific, identified instances of past discrimination that violated the Constitution or a statute" remained a compelling interest that can "permit resort to race-based government action." *Id.* at 207.

## IV.   UT-Austin Brought its Admissions Policy in Compliance with *Harvard.*

In the wake of and in response to *Harvard*, the UT System Board of Regents repealed a previous rule that had previously allowed institutions within the UT System to consider race as a factor in admissions. ROA.1945. UT-Austin then swiftly reviewed and amended its admissions policy (the "New Policy") and procedures and engaged in extensive communications concerning those modifications. These changes included (1) removing race and ethnicity as a subfactor that application reviewers could consider in the holistic review process; (2) removing applicants' self-supplied demographic information regarding their race and ethnicity from the application materials provided to reviewers during the holistic

review process; (3) instructing its reviewers that an applicant's race and ethnicity cannot be considered in the holistic review process and only materials in the applicant's file can be considered; (4) training its reviewers on how to appropriately handle an applicant's unsolicited disclosure of their race in a personal essay or other filing materials, stressing that reviewers may not consider the applicant's race or ethnicity as a positive or negative factor in their evaluation of the applicant; (5) supervising file reviewers during the holistic review process and conducting quality checks to ensure compliance with these new procedures; and (6) planning to conduct a review after the close of the admissions cycle to identify and address any challenges experienced in the implementation of these changes. ROA.1657. Crucially, this New Policy made it clear that it would be a violation of UT-Austin's policies and training "for anyone to access an applicant's checkbox data when reviewing an individual's file during holistic review" or "otherwise use the checkbox data to assess an applicant for admission." ROA.1955. Collectively, these changes ensured that UT-Austin stopped using race in undergraduate admissions decisions.

Despite these changes, SFFA remained concerned about the availability of race and ethnicity data during the admissions process. In response, in an attempt to resolve the case without additional litigation, UT-Austin provided additional information to SFFA clarifying that, during the admissions cycle, "[s]enior admissions officers have access to a 'dashboard' of aggregated data showing

numbers of persons who have applied to, been admitted to, and enrolled at UT. This dashboard information includes the aggregate percentages of race/ethnicity for each category: applied, admitted, and enrolled." ROA.1778. UT-Austin further explained that "[t]he dashboard data is not used in the holistic review process" but that "[t]he data is used by the admissions office to track general trends in the student body to help assess and improve UT's efforts at recruitment, enrollment, and retention and for purposes of compliance with mandatory reporting obligations." ROA.1778-79; *see also* ROA.1955 ("UT Austin retains the checkbox data on the race and ethnicity of applicants solely for purposes other than admissions decisions."). Finally, UT-Austin stated that its application season had started and that its application reviewers were actively reviewing files under the New Policy. ROA.1782. It also noted that no applicant in the 2023-24 admissions cycle was being considered under its old admissions policy. ROA.1782.

## V.   Based on the Changes UT-Austin Made, the District Court Correctly Dismissed This Case As Moot.

Unsatisfied with the changes UT-Austin made that brought it into compliance with *Harvard*, SFFA did not agree to settle the litigation. As a result, all parties filed motions seeking relief that would terminate the case. UT-Austin and Student Intervenors filed motions to dismiss for mootness, arguing that SFFA's case no longer presented a live controversy that the court could remedy through judicial action. ROA.1646, 1694. UT-Austin, in support of its motion, submitted an affidavit

describing the New Policy and how it differed from the Old Policy, as well as a training document demonstrating how its staff had been instructed about the New Policy. ROA.1654-93. SFFA opposed those motions and filed a countermotion for summary judgment, arguing that it had adequately demonstrated that UT-Austin's Old and New Policy violated the Equal Protection Clause and Title VI. ROA.1915, 1711. Specifically, SFFA argued that it was entitled to summary judgment because, in its view, both UT-Austin's Old Policy and the New Policy used race as a factor in admissions and were unable to satisfy the requirements of strict scrutiny as detailed by the Supreme Court in *Harvard*. ROA.1723-28. It sought permanent injunctions "(1) prohibiting UT from reinstating its prior admissions policy or using race as a factor in admissions, and (2) prohibiting any individuals in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process."[4] ROA.1728. UT-Austin and Student Intervenors opposed summary judgment. ROA.1946, 1957.

On July 15, 2024, the district court granted UT-Austin's and Student Intervenors' motions to dismiss on mootness grounds and therefore did not address

---

[4] On appeal, SFFA states that it is only seeking the second permanent injunction. Appellant's Br. at 13 n.2. Notably, these permanent injunction requests differ from what SFFA requested in its amended complaint. There, SFFA's permanent injunction relief requested (1) a permanent injunction barring Defendants from using race as a factor in future undergraduate admissions at UT-Austin; and (2) a permanent injunction requiring Defendants to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission. ROA.228.

SFFA's motion for summary judgment. ROA.2001-13. In its decision, the district court made several factual findings, including that: (1) UT-Austin's New Policy does not consider race or ethnicity as a factor in the admissions process and that it began using this New Policy for the Fall of 2023 admissions cycle, ROA.2008; (2) as a result of the New Policy, which included specific instructions and trainings for admissions officers and employees "to ensure that they do not consider race and ethnicity as a factor in the admissions process[,]" UT-Austin no longer considers race or ethnicity as a factor in admissions, ROA.2008-09; and (3) there is no evidence that UT-Austin still considers race in the admissions process given its policy to the contrary: "It is mere conjecture for SFFA to assert that UT-Austin still considers race in its admission practice, and the Court will not give credence to this unsubstantiated contention." ROA.2011. Based on these findings, the district court determined that the case is moot. ROA.2009.

SFFA timely appealed the district court's decision. ROA.2016

## SUMMARY OF THE ARGUMENT

This district court correctly dismissed this action on mootness grounds. SFFA's complaint, filed three years before the Supreme Court's decision in *SFFA v. Harvard*, is rooted in the idea that its members were being denied the opportunity to compete on equal footing for admission to UT-Austin because UT-Austin used race as one of many factors in deciding whom to admit. In response to the Supreme

Court's decision in *Harvard*, UT-Austin changed its admissions policy and training materials to make clear that race can no longer be used as a factor in admissions decisions. SFFA got its desired result—a race-neutral admissions policy. Therefore, given that there is no longer a live case or controversy for the Court to address, the district court's decision, dismissing SFFA's action on mootness grounds, is correct and should be affirmed.

Even if this Court determines otherwise, SFFA is still not entitled to its requested relief. Having dismissed the case on mootness grounds, the district court understandably did not substantively address SFFA's summary judgment motion. Accordingly, this Court should not consider the summary judgment motion in the first instance. But, regardless, the undisputed record demonstrates that SFFA is not entitled to summary judgment. And the district court's decision not to grant a permanent injunction should be affirmed because its factual findings, entitled to deference by this Court, demonstrate that SFFA has not met its burdens to show it is entitled to judgment as a matter of law or permanent injunctive relief.

# ARGUMENT

## I.     Introduction

The use of race in higher education admissions has a long and tumultuous history. *See supra* at 2-3. UT-Austin has, consistently and with fidelity, adopted whatever methods are constitutionally permissible to select its undergraduate class. *See supra* at 2-3. This remains the case after the Supreme Court's decision in *Harvard.* In response to that decision, UT-Austin quickly changed its admissions policy to bring it in compliance with the new rules around race-conscious admissions. ROA.1656. Specifically, it implemented the New Policy, a facially-neutral admissions policy, as well as additional safeguards, like training for the admission office staff and seasonal employees, to ensure that no admission decision is made using race as a factor. ROA.1657-63, 1665-93. And there is no evidence to suggest that, despite the New Policy, UT-Austin continues to race in its admissions decisions.

SFFA disagrees. It insists that despite the New Policy's race-neutral approach to admissions, UT-Austin is still, somehow, impermissibly using race to make its admissions decisions. SFFA, however, does not have any evidence to adequately support this speculative argument. Accordingly, the district court correctly determined that SFFA's case was moot. SFFA now asks this Court to ignore the paucity of the record before it and grant the relief to which it is not entitled. This

Court should not do so. Instead, it should affirm the district court's dismissal on mootness grounds.

## II.     The District Court Properly Dismissed This Case on Mootness Grounds.

The district court correctly determined that SFFA no longer has a cognizable interest in its action and that dismissal on mootness grounds was required. "When reviewing a dismissal for lack of subject matter jurisdiction, [this Court] reviews factual findings for clear error and legal conclusions *de novo*." *Funeral Consumers All., Inc. v. Serv. Corp. Intern.*, 695 F.3d 330, 336 (5th Cir. 2012). A finding is clearly erroneous only when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* at 574.

Article III of the U.S. Constitution requires that a court have before it an actual case or controversy at all stages of the judicial proceedings. *U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 395-96 (1980). A case is considered moot "when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Id.* at 396 (internal quotation omitted). Stated differently, "any set of circumstances that eliminates actual controversy after the

commencement of a lawsuit renders that action moot." *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006). Events that can render a case moot mid-stream include when it becomes "impossible for a court to grant any effectual relief" or when those changes "deprive[] the plaintiff of 'a personal stake in the outcome of the lawsuit.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160-61 (2016) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)); *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 72 (2013)). "Speculation is insufficient to establish the existence of a present, live controversy." *Ashcroft v. Mattis*, 431 U.S. 171, 173 n.2 (1977).

It is well settled in the Fifth Circuit and beyond that "mootness is a threshold jurisdictional inquiry." *La. Env't Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580 (5th Cir. 2004); *see also Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 335 (1980) ("The definitive mootness of a case or controversy . . . ousts the jurisdiction of the federal courts and requires dismissal of the case."). For that reason, courts in the Fifth Circuit regularly find that jurisdictional questions like mootness—even when they arise in the middle of a case—should be addressed immediately and before additional expenditure of time and resources on the merits. *See, e.g.*, *Coker v. Select Energy Servs., LLC*, 161 F. Supp. 3d 492, 495 (S.D. Tex. 2015) ("The interest of judicial economy favors a stay because discovery and substantial expenses, which may be needlessly incurred if the Fifth Circuit and/or

Supreme Court rules that a rejected offer of complete relief moots [the party]'s claims.").

### A.    Changes to the Old Policy Moot This Action.

This case is moot because the court can no longer give plaintiffs "any effectual relief whatever[.]" *Campbell-Ewald Co.*, 577 U.S. at 160-61. Mootness "often arises" when a law "is amended or repealed after plaintiffs bring a lawsuit challenging the legality of that statute or regulation. In that case, mootness is the default." *Freedom From Religion Found., Inc. v. Abbott*, 58 F.4th 824, 832 (5th Cir. 2023). Such is the case here: UT-Austin made multiple changes to its admissions policy to ensure that an applicant's race or ethnicity does not weigh on admissions decisions, including removing any self-supplied race or ethnicity information from application materials provided to reviewers and eliminating race or ethnicity as a factor reviewers were allowed to consider in the holistic review process. ROA.1654-64. This is the "precise relief that [SFFA] requested[.]" *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of N.Y.*, 590 U.S. 336, 338 (2020). Therefore, the case is moot. *See id.*; *see also Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that a case was moot when the university amended the relevant regulations so that the "the regulation at issue is no longer in force"); *Spell v. Edwards*, 962 F.3d 175, 179 (5th Cir. 2020) ("[A] case challenging a statute, executive order, or local ordinance usually becomes moot if the challenged law has expired or been repealed.").

This Court's decision in *Daves v. Dallas County* is instructive. In *Daves*, a group of pretrial detainees challenged the constitutionality of local bail practices. After they filed their lawsuit, the Texas legislature passed a new law relating to bail procedures that Dallas County argued addressed the underlying issues Plaintiffs had raised regarding its local bail practices. *Daves v. Dallas Cnty.*, 64 F.4th 616, 635 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 548 (2024).

Plaintiffs argued that their case was not moot, but this court determined that "[t]o rule on the status of [the new bail law] and its procedures at this point, based on evidence largely generated during proceedings that occurred pre-amendment, would constitute no more than an advisory opinion." *Id.* at 634. Moreover, though plaintiffs argued that Dallas County's bail practices were still unconstitutional in the wake of the new law, "there [was] minimal evidence in the record reflecting what actually happens in Dallas County after the effective date of [the new law.] In sum, the case is moot because the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (internal quotations omitted).

The same is true here. Almost all of the evidence in the record was gathered while the Old Policy was in effect. Now that UT-Austin no longer uses the Old Policy, a court order opining on whether it was constitutional would constitute an impermissible advisory opinion. This is exactly the type of situation that the mootness doctrine seeks to avoid. Regarding the New Policy, the only relevant

documents in the record are an affidavit from UT-Austin's Vice President of Admissions and a training presentation. As in *Daves*, where "some kind of video evidence" was insufficient to demonstrate that the case was still live, *id.*, this is minimal evidence as to the implementation of the New Policy at UT-Austin and is not sufficient to support SFFA's baseless assertion that the issues presented are still live.

SFFA argues that it can challenge the New Policy despite this lack of evidence because the mere access to student candidates' demographic data means that admissions officers at UT-Austin could hypothetically use race as a factor when making admission decisions, Appellant's Br. at 22, notwithstanding the fact that this would constitute "a violation of UT's policies and training," ROA.1955. As the district court noted, this is pure conjecture lacking any evidentiary support that demonstrates that UT-Austin employees have or will disregard the university's express policies forbidding the consideration of race in admissions. This is also a "textbook example of an unripe dispute." *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 630 (5th Cir. 2023). "If someday in the future [Defendant] appears to violate [Plaintiff]'s rights, he is more than welcome to bring a lawsuit. But until he is actively being aggrieved—or faces the imminent threat of illegal actions—his claim is not justiciable." *Id.* at 631.

SFFA also argues that it can still receive its requested injunctive relief, meaning that the case is not moot. Appellant's Br. at 18. SFFA is wrong. Courts look to the plaintiff's prayer for relief to determine whether its case is now moot. *See N.Y. State Rifle & Pistol Ass'n, Inc.*, 590 U.S. at 338 (holding that the case was moot when the state made a change to the law that was the "precise relief that petitioners requested"). In its amended complaint, SFFA asked for two permanent injunctions: (1) a permanent injunction barring Defendants from using race as a factor in future undergraduate admissions at UT-Austin; and (2) a permanent injunction requiring Defendants to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission. ROA.228. UT-Austin has already implemented these changes. Notably, it has changed its admission policy so that race is no longer a factor in undergraduate admissions decisions—going so far as to scrub any self-supplied race or ethnicity "checkbox" data an applicant may have volunteered from the admissions materials it gives reviewers. ROA.1657 Second, it has put in place policies and provided training to ensure that the few admissions officers who have access to information as to the race or ethnicity of an individual applicant race data know that it is impermissible to consider that information when engaged in the decisional process. ROA.1665-93. Importantly, this training also advises all admissions officers that they cannot use any self-disclosed racial information when making

admissions decisions. ROA.1679-80. And access to this information was, of course, explicitly considered and deemed acceptable by the Supreme Court as long as admissions offices made sure that information was not being used in unconstitutional ways. *Harvard*, 600 U.S. at 230-31. Therefore, any argument by SFFA that *Harvard* requires admissions offices to remove all conceivable access to race, when those offices have clear policies and procedures in place to ensure that admissions officers do not look up or use race or ethnicity data when making admissions decisions, misrepresents what *Harvard* mandates.

Despite this, SFFA argues that it has not received the precise relief it requested because it "sought a permanent injunction prohibiting any individuals in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process." Appellant's Br. at 18. But SFFA did not actually request this specific relief in its complaint. Rather, it asked that UT-Austin make changes to ensure that race was not considered in its admissions decisions and that its admissions officers be unaware of the race of the applicant. The New Policy has accomplished this. Admissions officers use neither the racial check-box data nor the dashboard that creates the aggregate reports during the holistic review process that decides whether applicants are admitted.[5]

---

[5] UT-Austin maintains this data to assist in the recruitment of admitted students, ROA.1659, 1955, and to comply with state laws thar require it to collect and report this data on an annual basis. Tex.

ROA.1778-79. That SFFA would prefer UT-Austin to have made different or additional changes to its admissions policy does not mean that its case remains alive. The same was true in *Daves*, where plaintiffs' dissatisfaction with how Texas chose to address concerns with its bail system was insufficient to overcome mootness: "There is more than one way to ensure that a bail system upholds due process rights. Texas has chosen its way, and Plaintiffs are not entitled to have this Court immediately intervene to tinker with the rules that the Legislature has just recently enacted." *Daves*, 64 F.4th at 633 (internal quotation omitted).

Unsurprisingly, the cases SFFA cites do not support its assertion that it is still entitled to relief. These cases all involve efforts by defendants to take advantage of the mootness doctrine while not legitimately changing the challenged program. In *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, for example, the Supreme Court determined that plaintiffs, who were challenging the union's collection of fees for political organizing, still had an interest in the case even though the union agreed to refund the fees for any union member who responded to a notice document letting them know they were eligible for a refund. 567 U.S. at 308. The case remained live

---

Educ. Code § 51.4032; *see also* 19 Tex. Admin. Code § 4.10(e)(2) ("Each general academic teaching institution, public community college, public state college, and public technical institute shall collect information regarding gender, race/ethnicity, and date of birth as part of the application process and report this information to the Coordinating Board. Common application forms do not have to be the source of those data."). Notably, nothing in *Harvard* addresses the consideration of race for purposes like data collection or recruitment of admitted students, much less prohibits it.

because the union notice that detailed the process for getting these fees refunded was potentially "improper because it include[d] a host of conditions, caveats, and confusions as unnecessary complications aimed at reducing the number of [union] members who claim a refund." *Id.* Likewise, in *Crocker v. Austin*, this Court found that a case was not moot because plaintiffs, who had originally challenged a vaccine mandate on religious grounds, still had an interest in challenging a purported "sham" process that would in theory allow individual plaintiffs to get an exception from the mandate, but in practice was a "process that [was] intended to deny all, or virtually all, religious exemptions from the vaccine mandate." 115 F.4th 660, 667 (5th Cir. 2024). Finally, in *Clarke v. Commodity Futures Trading Commission*, plaintiffs' challenge to an agency decision was not moot when the agency created a process by which plaintiffs could object to the agency decision, but did not actually rescind the challenged decision. 74 F.4th 627, 636 (5th Cir. 2023).

Uniformly, these cases demonstrate that a "case is not moot when the government rescinds one law only to enact a different version that disadvantages [the plaintiffs] in the same fundamental way." *Id.* at 63 (internal quotation omitted). That is not the case here. The New Policy is not a workaround that allows UT-Austin to continue to consider race while, at the same time, purporting not to do so. Rather, as the district court—whose factual findings are entitled to deference when dismissing a case on subject matter jurisdiction grounds, *Hooks v. Landmark Indus.,*

*Inc.*, 797 F.3d 309, 312 (5th Cir. 2015)—found that UT-Austin's New Policy strictly prohibits the consideration of race or ethnicity as a factor in the admissions process. ROA.2008-09; *see also* ROA.2011 ("It is mere conjecture for SFFA to assert that UT-Austin still considers race in its admission practice, and the Court will not give credence to this unsubstantiated contention."). Additionally, SFFA has not pointed to any evidence that even suggests that the district court's factual findings are clearly erroneous, instead merely relying on its own conjecture to insist that its case is still live.

## B.     UT-Austin Satisfies the Voluntary Cessation Exception.

SFFA argues that even if the New Policy is lawful, the case is still not moot because UT-Austin's "voluntary compliance" with the *Harvard* decision is insufficient to prevent UT-Austin's from using race in admissions in the future. Appellant's Br. at 19-20. It rests its hat on the voluntary cessation doctrine, which holds that "a defendant's voluntary cessation of a challenged practice does not [automatically] deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation omitted). But in so doing, it ignores the district court's conclusion that the voluntary compliance doctrine does not apply where, as here, a defendant changes its conduct in response to a change in the law. ROA.2009 (finding that UT Austin changed its admissions policies in response to a change in

the law—that is, in the aftermath of the *SFFA v. Harvard-UNC* decision"); *see also Daves*, 64 F.4th at 635. Put another way, UT-Austin was "not acting 'voluntarily' for the purpose of the voluntary-cessation exception to mootness—[it was] compelled to change [its] conduct based on a decision of our nation's highest court." *Diamond v. Penn. State Educ. Ass'n*, 399 F. Supp. 3d 361, 390 (W.D. Pa. 2019), *aff'd*, 972 F.3d 262 (3d Cir. 2020). But even if the voluntary compliance doctrine applies, UT-Austin's adoption of the New Policy satisfies it.

While a defendant's voluntary cessation does not automatically moot a case, *see Friends of the Earth, Inc. v*, 528 U.S. at 189, a governmental entity like UT-Austin is entitled to the presumption of good faith to help it meet this voluntary cessation burden. "[G]overnment actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 325 (5th Cir. 2009), *aff'd sub nom. Sossamon v. Tex.*, 563 U.S. 277 (2011).

Here, UT-Austin, a public university, has made official changes to its admissions policy in response to the *Harvard* decision. As a government actor, it is entitled to a presumption that these changes were made in good faith and will not be reversed when this case is dismissed. "That is so because [courts] presume that state actors, as public representatives, act in good faith." *Abbott*, 58 F.4th at 833.

Therefore, "without evidence to the contrary, [courts] assume that formally announced changes to official governmental policy are not mere litigation posturing." *Id.* (internal alterations and quotations omitted). There is no evidence of posturing here. In fact, UT-Austin was remarkably cooperative and transparent with SFFA during the district court proceedings, including by providing SFFA copies of its updated guidance to application file reviewers. ROA.1665-93. This is markedly different from situations where defendants "have only presented arguments through counsel that their behavior will change[.]" *Freedom From Religion Found., Inc. v. Abbott*, 955 F.3d 417, 425 (5th Cir. 2020). Moreover, the presumption of good faith is doubly valid here, because there is ample evidence of UT-Austin consistently following the relevant Supreme Court precedent relating to admissions as described *supra* at 2-3.

Rather than arguing that UT-Austin is not entitled to this good faith presumption—an implausible proposition to advance given-UT-Austin's long-standing compliance with this Court's and the Supreme Court's edicts regarding the use of race in college admissions—SFFA argues incorrectly that the good faith presumption is no longer good law. Appellant's Br. at 23. It bases this conclusion on the Supreme Court's decision in *FBI v. Fikre*, a case that applied the voluntary cessation doctrine to a government entity but did not discuss the good faith presumption to find that the government's decision to take the plaintiff off of the no-

fly list was not sufficient to moot plaintiff's challenge of his placement on the no-fly list in the first place. 601 U.S. 234, 241 (2024). It is an unsubstantiated stretch to conclude that the Supreme Court's failure to apply the good faith exception in *Fikre* somehow means that it no longer exists. And as SFFA acknowledges, this Court recently applied the good faith presumption in a case post-dating *Fikre*. *See Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 395-96 (5th Cir. 2024) (applying the good faith exception to determine that a government defendant's voluntary dissolution of the board alleged to have engaged in unconstitutional censorship was sufficient to satisfy the voluntary compliance doctrine and moot the case).

Most critically, there is no conflict between the Supreme Court's decision in *Fikre* and the continued application of the good faith exemption. As the Supreme Court stated, the burden of the voluntary cessation doctrine "holds for governmental defendants no less than for private ones." *Fikre*, 601 U.S. at 241. The good faith presumption does not change that standard; it merely makes it easier for governmental defendants to meet it by using this presumption to demonstrate that changes made to a policy will not be reversed. Notably, this presumption can be rebutted, *see Speech First v. Fenves,* 979 F.3d 319, 328 (5th Cir. 2020), *as revised* (Oct. 30, 2020), in which case the governmental entity must prove, without the benefit of the good faith presumption, that it is absolutely clear that its wrong

behavior could not reasonably be expected to recur, *id.* at 329. This was effectively the situation in *Fikre*, where, without the benefit of the good faith presumption, the Supreme Court applied the voluntary cessation doctrine in the same manner as it would for a private defendant. *Fikre*, 601 U.S. at 241-45.

SFFA also raises a number of other arguments as to why UT-Austin does not satisfy the voluntary cessation doctrine. For example, SFFA argues that UT-Austin cannot meet this standard when it "*never promised* not to bring back its old policies," Appellant's Br. at 20, but this Court has already determined that "there is no requirement that a government actor renounce its prior conduct in order to moot a case[,]" *Boudreaux*, 86 F.4th at 630. In fact, "a case will become moot even when a defendant 'vehemently' insists on the propriety of 'the conduct that precipitated the lawsuit.'" *Fikre*, 601 U.S. at 244 (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013)). "What matters is not whether a defendant repudiates its past actions, but what repudiation can prove about its future conduct." *Id.* Here, repudiation is unnecessary given the significant steps UT-Austin took, immediately after the *Harvard* decision, to develop and implement an admissions policy that does not consider race or ethnicity as a factor in admissions, especially when its past practice demonstrates that UT-Austin will abide by an admissions policy it modified in response to a change in the law until a new change in the law permits (or requires) another change. These actions, contrary to what SFFA argues, differentiate UT-

Austin from the government defendants in *Freedom from Religion Foundation v. Abbott* and *Speech First, Inc. v. Schissel* whose decisions to change a policy were insufficient to moot the action because their actions did not sufficiently demonstrate that they would not return to the challenged conduct in the future. Neither the changes made by the state defendants in *Abbott*, who merely asserted in litigation that "their behavior *will change*" in response to a new Supreme Court decision, 955 F.3d 417, 425 (5th Cir. 2020), nor changes made by the University defendants in *Schissel*, who continued to defend their old policy even after the relevant constitutional considerations had changed, 939 F.3d 756, 770 (6th Cir. 2019), were on par with the significant changes that UT-Austin has made.

SFFA also argues that the adoption of the New Policy is a mere policy change that can be reversed on a whim. Appellant's Br. at 20. Not so. The UT-Austin system responded to the *Harvard* decision in two ways: UT-Austin's governing body, the Board of Regents, rescinded a pre-existing rule that allowed for the consideration of race in undergraduate admissions decisions, ROA.1945, and UT-Austin enacted the New Policy that delineated the procedures to ensure that race would not be used as a factor in undergraduate admissions decisions, ROA.1654-57. Specifically, the UT-Austin Board of Regents voted to repeal the regent's rule that had allowed UT-Austin to consider race as a factor in admissions and directed the General Counsel to the Board to review existing rules and make any additional necessary revisions to

comply with the *Harvard* decision. ROA.1945. And, in turn, UT-Austin implemented comprehensive changes in the New Policy to ensure that race and ethnicity are not considered in undergraduate admissions. ROA.1654-57. Significantly, UT-Austin cannot rescind or modify the New Policy to allow for the consideration of race or ethnicity without the Board of Regents first changing course. Plainly, the New Policy could not be easily withdrawn, despite SFFA's assertions to the contrary. *Cf.* Appellant's Br. at 20.

Finally, SFFA argues that this case is not moot because UT-Austin has failed to implement "procedural safeguards" to ensure that admissions officers will not violate the New Policy. Appellant's Br. at 22. This argument is both factually inaccurate and legally immaterial. UT-Austin has instituted procedural safeguards by training its staff on the New Policy to ensure that they understand the changes to the admissions process, conducting quality checks during the admissions process to ensure its reviewers are following the New Policy, and performing a review after the admissions process closes to review and identify any challenges that arose. ROA.1665-93. More importantly, a party does not need to demonstrate the existence of procedural safeguards to establish mootness. Rather, the existence or lack of such safeguards is merely one aspect for a court to consider when determining whether a defendant's conduct is likely to recur. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1153 (9th Cir. 2019) (describing the existence or lack thereof

of procedural safeguards as relevant to the inquiry of whether challenged behavior is likely to recur). Here, SFFA has provided no evidence to suggest that UT-Austin's procedural safeguards are not sufficient to ensure that the New Policy is faithfully implemented.[6]

Accordingly, this case is moot, and this court should affirm the district court's dismissal of SFFA's action.

## III. SFFA Is Not Entitled to Summary Judgment.

### A. This Court Cannot Reach the Merits of SFFA's Summary Judgment Motion in the First Instance.

Because the court below correctly concluded that this case is moot, it did not decide SFFA's motion for summary judgment. ROA.2004 (stating that it "does not reach" SFFA's motion for summary judgment). "As a well-established general rule, this court will not reach the merits of an issue not considered by the district court." *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022)

---

[6] SFFA also suggests, by relying on guidance in the employment hiring context, that if an employer solicits racial information that is not concealed from the decisionmaker, then that information "will form the basis" for a hiring decision. Appellant's Br. at 22. This is irrelevant here because the New Policy prohibits decisionmakers from looking up or relying on any available racial information when making admissions decisions. ROA.1658-59. And, in fact, the guidance cited by SFFA, Appellant's Br. at 22, recommends this exact type of policy to allow for the collection of racial information while ensuring that the hiring process remains race-neutral. *See Pre-Employment Inquiries and Race*, U.S. EQUAL EMP. OPPORTUNITY COMM'N, perma.cc/3TE5-PUKP (last visited Jan. 15, 2025) ("If an employer legitimately needs information about its employees' or applicants' race for affirmative action purposes and/or to track applicant flow, it may obtain the necessary information and simultaneously guard against discriminatory selection by using a mechanism, such as "tear-off" sheets. This allows the employer to separate the race-related information from the information used to determine if a person is qualified for the job."). Significantly, UT-Austin is mandated by law to collect this information. *See supra* n.5.

(internal quotations omitted). As such, there is no basis for this Court to consider SFFA's improperly raised arguments on the merits of summary judgment.

**B.     SFFA's Summary Judgment Motion Fails on the Merits.**

Even if this Court chooses to reach the merits of SFFA's summary judgment motion, SFFA is not entitled to judgment in its favor. SFFA, as the "party seeking summary judgment," "bears the initial responsibility of informing [the court] of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This includes "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (quotations omitted). Where, as here, "the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). When making its determination, this Court must draw all justifiable inferences in favor of UT-Austin. *See Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 338 (5th Cir. 2005).

>      *i.   SFFA has not met its initial burden for summary judgment as to the constitutionality of UT-Austin's Old Policy.*

SFFA failed to meet its initial summary judgment burden to identify enough evidence to demonstrate the absence of a genuine dispute of material fact. This is not surprising. Even though this case has been active since 2020, there has been no

31

discovery on the substantive claims at issue. *See* ROA.1-31; *see also* ROA.531. As a result, SFFA relies on a hodge-podge of evidence consisting of the preliminary statement in UT-Austin's answer, one declaration from the vice president of admissions, focused largely on the New Policy, an admission from UT-Austin's answer in the 2008 *Fisher* affirmative action case, and excerpts from six publicly available documents found on UT-Austin's website related to admissions data from UT-Austin and reports for the governor and state legislature about UT-Austin's budget. ROA.1723-26.

The admissibility of this evidence at trial, a required element for evidence to be considered at summary judgment, *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012), is questionable at best. For example, while the data and budget reports are publicly available, public documents still need to be authenticated "by a witness who wrote it, signed it, used it, or saw others do so" to be admissible. *Robinson v. City of Garland*, No. 3:10-CV-2496-M, 2016 WL 7396048, at *4 (N.D. Tex. Aug. 17, 2016); *see also* Fed. R. Evid. 901. In any event, the general paucity of evidence alone suggests that summary judgment is inappropriate.

Admissibility aside, a closer look at the evidence SFFA identifies demonstrates that it is nonetheless not enough to satisfy SFFA's initial burden to demonstrate the absence of a genuine dispute of material fact. For example, in support of its argument that UT-Austin's Old Policy is unconstitutional because it

uses race as a negative in its admission process, Appellant's Br. at 25 (citing ROA.1724-26), it relies on an admission from UT-Austin's answer in the *Fisher* case, filed in 2008. ROA.1725 (citing Connolly Decl., Ex. G at 6 ¶ 25 (located at ROA.1795); *id.*, Ex. H at 4 ¶ 25 (located at ROA.1828)). SFFA identifies no evidence to support this assertion for any admissions cycle between 2009 and now.

Similarly, for two other requirements—that UT-Austin should not use race as a stereotype and that its use of race must have an endpoint—SFFA solely relies on a few sentences from the preliminary statement of UT-Austin's answer in this case. ROA.1725 (citing Dkt. 14 at 4 (located at ROA.231)). But SFFA strips this evidence of critical context, which undercuts SFFA's legal conclusions. For example, SFFA argues that UT-Austin uses race as a stereotype because it "justif[ies] its use of race by trafficking in these prohibited racial stereotypes that students have 'unique and direct perspectives' simply because of their race." ROA.1725. But UT-Austin's full statement is about a lot more than just racial diversity. Rather, UT-Austin adopted "a broad vision of student body diversity, which looks to many factors, including socioeconomic background, race and ethnicity, extracurricular interests, demonstrated leadership, hardships overcome, and special talents," which has the benefit of "bringing unique and direct perspectives to the issues and topics discussed and debated in classrooms." ROA.234. Especially since this Court is required to make all inferences in favor of UT-Austin, this evidence demonstrates that there is

at minimum a genuine issue of material fact as to whether UT-Austin uses race as a stereotype.

In arguing that there is no genuine dispute as to whether UT-Austin's use of race in admissions lacks an endpoint, SFFA once again takes UT-Austin's statements out of context. Specifically, SFFA argues that "the University described its continued use of race in admissions as 'key to achieving its mission' and 'critical to preparing students to succeed.'" ROA.1725. These statements, however, were not made specifically about UT-Austin's use of race, but rather its broader pursuit of student body diversity. *See* ROA.234 (noting that "assembling a student body that not only is exceptionally talented, but also richly diverse, is key to achieving [UT-Austin's] mission"); *id.* ("UT-Austin's own experience has confirmed the judgment of the Nation's highest ranked colleges and universities that student body diversity is *critical to preparing students to succeed* in the world they will enter when they leave campus." (emphasis added)). Crucially, these two statements simply do not address whether UT-Austin's use of race in admissions has an endpoint, and they certainly do not suffice to demonstrate that there is no dispute about the lack of an endpoint—especially because this Court is required to make inferences in favor of the UT-Austin, not against it.

In short, the evidence on which SFFA relies, even if admissible, is insufficient to satisfy its initial burden. "It is not enough to move for summary judgment without

supporting the motion in any way." *Cooper v. Blair Logistics, LLC*, No. 4:22-CV-00230, 2023 WL 2787953, at *2-3 (E.D. Tex. Apr. 5, 2023) (internal quotation omitted). "If the moving party has not fully discharged this initial burden of production, its motion for summary judgment must be denied[.]" *Id.*

> ii. *SFFA is not entitled to summary judgment as to the constitutionality of the New Policy because it has not demonstrated that strict scrutiny applies.*

SFFA is also unable to satisfy its initial summary judgment burden as to the New Policy. Its argument suffers a fundamental infirmity: SFFA argues that the New Policy is unconstitutional based on the strict-scrutiny analysis promulgated in *Harvard*. But SFFA skips a crucial threshold step: "To establish an equal protection claim, [a plaintiff] must first show that two or more classifications of similarly situated persons were treated differently." *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (internal quotation marks omitted). "Once that threshold element is established, the court then determines the appropriate level of scrutiny to apply." *Id.* Strict scrutiny is, of course, applied to racial classifications. *Harvard*, 600 U.S. at 206. But before SFFA can ask this Court to apply strict scrutiny, it must demonstrate that there is no genuine issue of material fact that the New Policy makes classifications between similarly situated persons based on race to prevail on summary judgment. It fails to do so.

SFFA relies on sheer speculation and conjecture to support its contention that, the New Policy notwithstanding, UT-Austin continues to use race as a factor in admissions decisions. It speculates, for example, that unless admissions officers are completely shielded from race and data concerning racial composition, they might use this information when considering applications. *See* Appellant's Br. at 26-27. But "mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment." *Dallas Fire Fighters Ass'n v. City of Dallas*, 885 F. Supp. 915, 920 (N.D. Tex. 1995) (internal quotation omitted). Indeed, the only record evidence unequivocally and indisputably shows UT-Austin no longer considers race or ethnicity in admissions, a fact that the district court found in UT-Austin's favor. ROA.2008-09; *see also* ROA.2011. At the very least, this evidence establishes a genuine dispute as to whether the New Policy uses race, demonstrating SFFA's lack of entitlement to summary judgment.

SFFA's reliance on *United States v. Fordice* for the proposition that a court can order relief to eliminate all vestiges of segregation does not change this outcome. *Fordice*'s approach to remedying segregation is inapplicable to UT-Austin's attempts to further integrate its student body. Specifically, *Fordice* dealt with decades-long *de jure* segregation within the Mississippi state university system and the effect of longstanding policies and procedures that perpetuated that segregation.

505 U.S. 717, 721-25 (1992). Conversely, UT-Austin's previous race-based admissions policies were not attempts to segregate students on the basis of their race. Indeed, UT-Austin's limited consideration of race was designed to foster racial integration and diversity and had been found constitutional as recently as 2016. This is the goal of *Fordice*—to ensure that states are doing everything they can to ensure that its state university system is as integrated and diverse as possible.

Accordingly, given the lack of evidence as to the New Policy's use, if any, of race, SFFA has not and cannot demonstrate entitlement to summary judgment.

## IV. SFFA Is Not Entitled to a Permanent Injunction.

Because SFFA is not entitled to summary judgment, any discussions regarding what relief it is entitled to are irrelevant. "To justify a permanent injunction, [] the plaintiff must demonstrate actual success on the merits." *Calmes v. United States*, 926 F. Supp. 582, 591-92 (N.D. Tex. 1996) (citing *Amoco Prod. Co. v. Vill. of Gambell,* 480 U.S. 531, 546 n.12 (1987)). "Usually, the remedy of a permanent injunction is only proper after the conclusion of trial on the merits, however, a court may grant a permanent injunction without trial if there are no material issues of fact and the issues of law have been correctly resolved." *Haley v. DeSoto Par. Sch. Bd.*, 600 F. Supp. 3d 690, 702 (W.D. La. 2022) (internal quotation omitted). Where, as here, "there remain genuine disputes of material fact and

questions of law outstanding," a plaintiff's request for a preliminary injunction should be denied. *Id.*

Therefore, the trial court did not abuse its discretion by denying the permanent injunctions that SFFA sought. "Traditional equitable principles control the decision to enter an injunction, under which the court has broad discretion to balance the interests of the parties." *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 530 (5th Cir. 2008). Therefore, this Court "review[s] the trial court's granting or denial of [a] permanent injunction for abuse of discretion." *Freedom From Religion Found.*, 955 F.3d at 426 (internal quotation omitted). "An abuse of discretion occurs where the trial court (1) relies on clearly erroneous factual findings, (2) relies on erroneous conclusions of law, or (3) misapplies the factual or legal conclusions when fashioning its injunctive relief." *Crown Castle Fiver, L.L.C. v. City of Pasadena*, 76 F.4th 425, 433 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 820 (2024) (cleaned up). This "is a demanding standard[.]" *Id.*

Here, the trial court's factual findings supporting the denial of the permanent injunctions were not clearly erroneous. A plaintiff is entitled to a permanent injunction when they can demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Though the district court did not conduct this specific analysis, its factual findings make clear that SFFA did not demonstrate that it had suffered an irreparable injury. First, the district court determined that UT-Austin's New Policy does not consider race or ethnicity as a factor in the admissions process and that it began using this New Policy for the Fall of 2023 admissions cycle. ROA.2008. Second, it found that the New Policy included specific instructions and trainings for admissions officers and employees "to ensure that they do not consider race and ethnicity as a factor in the admissions process." ROA.2008. And third, the trial court determined that there is no evidence that UT-Austin still considers race in the admissions process given its policy to the contrary: "It is mere conjecture for SFFA to assert that UT-Austin still considers race in its admission practice, and the Court will not give credence to this unsubstantiated contention." ROA.2011.

These factual findings are not clearly erroneous. The New Policy makes it clear that race or ethnicity may no longer be used as a factor in making admissions decisions. ROA.1689. Nor is there evidence that the New Policy notwithstanding, any admissions officer used race or ethnicity as a factor in making an admission decision. SFFA disagrees with the district court's factual findings, arguing that the New Policy "*still* considers race unlawfully" and that "[e]ven if it didn't, the undisputed facts show that there remains a cognizable danger of recurrent violation."

Appellant's Br. at 30 (internal quotations omitted). These assertions, however, are not supported by any evidence—let alone evidence demonstrating that the court's factual fundings are clearly erroneous. Here, as the district court correctly noted, SFFA does not have facts, only conjecture. *See supra* at 11. Accordingly, SFFA is not entitled to any permanent injunctive relief.

## CONCLUSION

For these reasons, Plaintiffs respectfully request that this Court affirm the district court's dismissal on mootness grounds.

Dated: January 15, 2025

Respectfully submitted,

*/s/ Maya Brodziak*
Maya Brodziak
D.C. Bar No. 90030856
Email:
mbrodziak@lawyerscommittee.org

Sumayya Saleh
D.C. Bar No. 1743437
Email: ssaleh@lawyerscommittee.org

Dariely Rodriguez
D.C. Bar No. 1601934
Email:
drodriguez@lawyerscommittee.org

LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8600

Alan R. Kabat
D.C. Bar No. 464258
Email: kabat@bernabeipllc.com

BERNABEI & KABAT, PLLC
1400 16th Street NW, Suite 500
Washington, D.C., 20036
(202) 745-1942

*Counsel for Student Intervenors*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 9,697 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman font size 14.

Dated: January 15, 2025                           */s/ Maya Brodziak*
                                                    Maya Brodziak

## CERTIFICATE OF SERVICE

I certify that on January 15, 2025, this brief was filed using the Court's CM/ECF system. All participants in the case are registered CM/ECF users and will be served electronically via that system.

*/s/ Maya Brodziak*

Maya Brodziak