# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 11, 2025

Lyle W. Cayce
Clerk

No. 24-50631

---

Students for Fair Admissions, Incorporated,

*Plaintiff—Appellant*,

*versus*

University of Texas at Austin; James B. Milliken, *Chancellor of the University of Texas System in his Official Capacity*; Steven Leslie, *Executive Vice Chancellor for Academic Affairs of the University of Texas System in his Official Capacity*; Daniel H. Sharphorn, *Vice Chancellor and General Counsel of the University of Texas System in his Official Capacity*; Jay Hartzell, *Interim President of the University of Texas at Austin in his Official Capacity*; Board of Regents of the Texas State University System; David J. Beck, *Member of the Board of Regents in his Official Capacity*; Christina Melton Crain, *Member of the Board of Regents in her Official Capacity*; Kevin P. Eltife, *Member of the Board of Regents in his Official Capacity*; R. Steven Hicks, *Member of the Board of Regents in his Official Capacity*; Jodie Lee Jiles, *Member of the Board of Regents in his Official Capacity*; Janiece Longoria, *Member of the Board of Regents in her Official Capacity*; Nolan Perez, *Member of the Board of Regents in his Official Capacity*; Kelcy L. Warren, *Member of the Board of Regents in his Official Capacity*; James C. (Rad) Weaver, *Member of the Board of Regents in his Official Capapcity*; Daniel Jaffe, *Interim Executive Vice President and Provost*; Rachelle Hernandez, *Senior Vice Provost for Enrollment Management and Student Success*; Miguel Wasielewski, *Executive Director for Office of Admissions*,

*Defendants—Appellees*,

BLACK STUDENT ALLIANCE; TEXAS ORANGE JACKETS; TEXAS NAACP; ADAYLIN ALVAREZ; MORGAN BENNETT; LIZ KUFOUR; BRIANNA MALLORIE MCBRIDE; DESIREE ORTEGA-SANTIAGO; NIMA RAHMAN; ALEXANDRA TRUJILLO; ROSALEEN XIONG,

*Intervenor Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:20-CV-763

---

Before SMITH, GRAVES, and DUNCAN, *Circuit Judges*.

JERRY E. SMITH, *Circuit Judge*:

In *Students for Fair Admissions, Inc., v. President & Fellows of Harvard College* ("*Harvard*"), 600 U.S. 181, 231 (2023), the Court held that every university applicant "must be treated based on his or her experiences as an individual—not on the basis of race." In response to that decision, public and private universities such as Yale, Harvard, and the University of North Carolina erected firewalls that prevent admissions officers from learning applicants' race through "check-box" data, and many schools have also barred their officers from receiving aggregate racial data during the admissions process.

The University of Texas at Austin ("UT") took a different path. After *Harvard*, UT revised its official policy to exclude race as a factor in admissions. But it continues to allow admissions officers unrestricted access to applicants' racial check-box data and aggregate racial data during the decisionmaking process. Students for Fair Admissions ("SFFA") claims that such access constitutes a *per se* violation of the Equal Protection Clause and Title VI. And even if it does not, SFFA alleges, UT's facially race-neutral policy is a subterfuge for continuing race discrimination. SFFA requests declaratory relief as to UT's pre-*Harvard* policy and declaratory and

2

No. 24-50631

injunctive relief as to the post-*Harvard* policy.

The district court dismissed all claims as moot. Although the claims are moot insofar as they address the old policy, they continue to present a live controversy as to the revised policy. We therefore affirm in part, reverse in part, and remand for further proceedings.

## I.
### A.

UT has a long history of using race in admissions. Before 1996, UT considered two primary factors in its admissions process: (1) an "Academic Index" reflecting an applicant's test score and academic record from high school and (2) an applicant's race. In 1996, we held unconstitutional the consideration of race in admissions. *Hopwood v. Texas*, 78 F.3d 932 (5th Cir.), *cert. denied*, 518 U.S. 1033 (1996). In response, UT adopted a new holistic metric to be used with the Academic Index—a "Personal Achievement Index"—that did not consider race and instead measured "a student's leadership and work experience, awards, extracurricular activities, community service, and other special circumstances." *Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 304 (2013) ("*Fisher I*").[1]

That *status quo*, however, did not last. In the wake of *Grutter v. Bollinger*, 539 U.S. 306 (2003), and *Gratz v. Bollinger*, 539 U.S. 244 (2003), UT reverted its admissions policy to include race as a factor in an applicant's "Personal Achievement Index." *Fisher I*, 570 U.S. at 305–06. The Supreme

---

[1] In addition, the Texas Legislature enacted what is known as the Top Ten Percent Law. *See* TEX. EDUC. CODE § 51.803(a). That law grants automatic admission to students in Texas who graduate in the top ten percent of their high school class to any public state college, including UT. Automatic admission to UT is currently restricted to the top five percent. *Id.* § 51.803(a-1). Seventy-five percent of UT's entering freshman class receive automatic admission because they graduated near the top of their high school class, while the remaining twenty-five percent are subject to the holistic-review process.

Court upheld UT's race-conscious admissions policy in *Fisher v. University of Texas at Austin*, 579 U.S. 365 (2016) ("*Fisher II*"), and that policy remained in effect until 2023, when UT revised its admissions policy to comply with *Harvard*.

### B.

UT's holistic-review process works as follows:  UT provides a rubric to its file-reviewers that requires them to consider, among other things, an applicant's "honors and awards, essays, [and] recommendations," and—until 2023—an applicant's "race and ethnicity."  "[T]he file of each applicant . . . is scored independently by two holistic file reviewers," and "[i]f the scores [] are two or more points apart, the file is reviewed and scored by a third, more senior member of the Office of Admissions."  Once that process is complete, UT admits applicants based on a matrix that combines the holistic and Academic Index scores.  Race or ethnicity was not and is not considered at that final stage.

### C.

In response to *Harvard*, the UT Board of Regents repealed Rule 40304, which authorized UT to adopt race-conscious admissions plans.  UT amended its policy to prohibit race-conscious admissions, including (1) removing "check-box" racial data from the applicant's file before it is reviewed and (2) removing "race and ethnicity" as a subfactor in the holistic-review process.  In addition, UT implemented training, based on the guidance in *Harvard*, for how admissions officers should handle applicants' unsolicited disclosure of their race or ethnicity in essays or other materials.  UT also instituted quality checks to ensure that admissions officers and file-reviewers comply with its new procedures.

UT's policy, however, grants full-time admissions officers unrestricted access to "applicants' self-reported 'check-box information'"—in

other words, their race—despite instructing those officers not to look at that information while performing holistic reviews.  The policy also grants those admissions officers "access to a 'dashboard' of aggregated data showing numbers of persons who have applied to, been admitted to, and enrolled at UT[, including] aggregate percentages of race/ethnicity for each category: applied, admitted, and enrolled."  That dashboard is "updated daily and includes both current numbers and year-over-year changes."

Texas law requires UT to request that applicants identify their race or ethnicity on applications, collect those responses, and report them to the Texas Higher Education Coordinating Board.[2]  Texas law, however, requires neither that admissions officers have access to that data nor that the universities report the data before admissions decisions are finalized.

## D.

SFFA is a "nonprofit membership group of . . . students, parents, and others who believe that racial classifications and preferences in college admissions are unfair, unnecessary, and unconstitutional."  In 2020, SFFA sued UT alleging that its undergraduate admissions process improperly considers race in violation of the Equal Protection Clause and federal civil rights statutes.  SFFA sought: (1) "[a] declaratory judgment . . . that Defendants' admissions policies and procedures violate the Fourteenth Amendment of the U.S. Constitution, Title VI of the Civil Rights Act of 1964, . . . and federal civil rights statutes 42 U.S.C. §§ 1981 and 1983;" (2) "[a] declaratory judgment . . . that any use of race or ethnicity in admissions in the educational setting violates the Fourteenth Amendment, Title VI of the Civil Rights Act of 1964, . . . and federal civil rights statutes 42 U.S.C. §§1981 and 1983";

---

[2] Tex. Educ. Code §§ 51.762(a), 51.4032; 19 Tex. Admin. Code § 4.10(c)(1)(A), (e)(2).

(3) "[a] permanent injunction barring Defendants from using race as a factor in future undergraduate admissions decisions at UT-Austin;" (4) "[a] permanent injunction requiring Defendants to conduct all admissions in a manner that does not permit those engaged in the decisional process to be aware of or learn the race or ethnicity of any applicant for admission;" and (5) "[a]ll other relief this Court finds appropriate and just."

In 2021, UT "moved for summary judgment or dismissal based on lack of standing, *res judicata*, and collateral estoppel." *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, 37 F.4th 1078, 1083 (5th Cir. 2022). The district court ruled that SFFA had standing and granted summary judgment for UT, holding that SFFA's claims were barred under *res judicata*. SFFA appealed, and we reversed the summary judgment. We also held that SFFA had Article III standing.

The district court stayed the case pending the resolution of *Harvard*, and UT then moved to dismiss the case as moot under Federal Rule of Civil Procedure 12(b)(1) in light of its post-*Harvard* policy revisions. SFFA opposed that motion and moved for summary judgment. The district court dismissed the case as moot and entered final judgment. *Students for Fair Admissions, Inc. v. Univ. of Tex. at Austin*, No. 1:20-cv-763, 2024 WL 3666177 (W.D. Tex. July 15, 2024).

On appeal, SFFA advances three requests for relief: (1) a declaratory judgment that UT's old admissions policy is unlawful; (2) a declaratory judgment that UT's revised admissions policy is unlawful; and (3) an injunction prohibiting any individual in UT's admissions office from receiving or having access to racial check-box data or aggregate reports on race during the admissions process.[3]

---

[3] The student intervenors contend that SFFA's requests for relief on appeal differ

No. 24-50631

## II.

We begin, as we must, with jurisdiction, which "is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Ex parte McCardle*, 74 U.S. 506, 514 (1868). We review *de novo* "questions of federal jurisdiction, including mootness." *Tucker v. Gaddis*, 40 F.4th 289, 292 (5th Cir. 2022) (per curiam). "When reviewing a dismissal for lack of subject matter jurisdiction, we review factual findings for clear error and legal conclusions *de novo*." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 336 (5th Cir. 2012).

Article III limits our jurisdiction to "Cases" and "Controversies." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559 (1992). "We have repeatedly held that an 'actual controversy' must exist not only 'at the time the complaint is filed,' but through 'all stages' of the litigation." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 90–91 (2013) (citation omitted). If a change in circumstances eliminates the "actual controversy" during the lawsuit, the case becomes moot. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 661 (5th Cir. 2006).

"[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In other words, mootness occurs only when it is "impossible for the court to grant 'any effectual relief whatever'

---

from its amended complaint. Although SFFA has changed how it phrases its requested relief, the "essential form of relief sought has not changed"—SFFA is seeking a declaratory judgment that UT's admissions practices are unlawful and an injunction to prevent admissions officers from having access to racial data. *Franciscan All., Inc. v. Becerra*, 47 F.4th 368, 378 (5th Cir. 2022); *see also* Fed. R. Civ. P. 54(c) (authorizing district courts to grant "relief to which each party is entitled, even if the party has not demanded that relief in its pleadings").

to a prevailing party." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12, (1992) (citation omitted). "Thus, when 'a complaining party manages to secure outside of litigation *all* the relief he might have won in it,' the case is moot."[4] But "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot."[5]

A defendant, however, "cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC*, 568 U.S. at 91. The "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). "[A] defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."[6]

To determine whether SFFA's claims are moot, we proceed claim by claim. *Boudreaux v. La. State Bar Ass'n*, 86 F.4th 620, 629 (5th Cir. 2023).

### A. UT's Pre-*Harvard* Admissions Policy

From 2004 until 2023, UT openly considered race in admissions. In 2020, SFFA challenged UT's admissions policy as unconstitutional. But in 2023, to comply with *Harvard*, UT rescinded its race-conscious admissions policy and adopted a facially race-neutral policy that "remove[s] [racial] data . . . from the application files provided to reviewers during the holistic review process" and instructs reviewers that "an applicant's race and ethnicity can-

---

[4] *Crocker v. Austin*, 115 F.4th 660, 667 (5th Cir. 2024) (emphasis added) (quoting *FBI v. Fikre*, 601 U.S. 234, 240 (2024)).

[5] *Dierlam v. Trump*, 977 F.3d 471, 477 (5th Cir. 2020) (quoting *Knox v. Serv. Emps. Int'l Union*, 567 U.S. 298, 307–08 (2012)).

[6] *Already*, 568 U.S. at 91 (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)).

not be considered in the holistic review process." UT's old admissions policy is no longer in effect and cannot reasonably be expected to be revived, so SFFA's claim is moot as it pertains to the now-abandoned policy.[7] UT has satisfied its "formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (quotation omitted).

First, the changes to UT's admissions policy, though adopted to comply with *Harvard*, were voluntary.[8] We have not directly addressed whether a defendant's action made in response to new binding precedent, announced in a case to which the defendant was not a party, is involuntary. In *Boudreaux*, however, we evaluated a defendant's compliance with new binding precedent, announced in a case to which the defendant was not a party, under the voluntary-cessation framework. 86 F.4th at 630. Although *Boudreaux* did not explain why compliance with a binding precedent is voluntary, its implicit holding makes sense. Generally, "one is not bound by a judgment *in personam* in a litigation in which he is not designated as a party or to which he has not been made a party by service of process." *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). And because non-parties are not bound by the judgment, they are not compelled by penalty of contempt to comply with it. Accordingly, we analyze UT's and the Board of Regents's conduct under the voluntary-cessation framework.

Second, we need not resolve the parties' dispute whether UT, as a

---

[7] *See Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (holding that the "issue of the validity of the old regulation is moot" because the university "substantially amended its regulations" such that "the regulation at issue [was] no longer in force").

[8] The district court concluded the opposite by relying on *Daves v. Dallas Cnty., Tex.*, 64 F.4th 616, 634–35 (5th Cir. 2023) (en banc). That case, however, is inapposite because it involved a change compelled by a statute, not a court order. *Id.* at 633–35.

government actor, is entitled to a presumption of "good faith" because UT has met its formidable burden in any event.[9] "Without evidence to the contrary," courts have presumed that "formally announced changes to official governmental policy are not mere litigation posturing." *Sossamon*, 560 F.3d at 325; *see also Boudreaux*, 86 F.4th at 630. SFFA avers that that relaxed standard for governments has not been applied to voluntary cessation by a public university and thus should not apply to UT. SFFA also posits that the presumption of good faith for government actors is no longer good law, citing *FBI v. Fikre*, 601 U.S. 234 (2024). Specifically, SFFA claims that because *Fikre* held that the requirement of proving that voluntary cessation is permanent "holds for governmental defendants no less than for private ones," *id.* at 241, a long line of our caselaw has been overruled.[10]

Because UT repealed its previous admissions policy, the UT Board of Regents repealed Rule 40304, and there is no indication that either intends to reconsider its decisions, the case is moot regardless of whether UT receives a presumption of good faith. *See FFRF*, 58 F.4th at 833–34. "[I]t makes no difference in this instance whether [UT] must satisfy a 'lighter burden.'" *Id.* at 833 (quoting *Sossamon*, 560 F.3d at 325). "[T]he evidence shows that the [old policy] has been formally repealed, with no indication that [UT or the Board of Regents] intends to reconsider that decision." *Id.* at 834.

The Board of Regents repealed Rule 40304, and UT revised its admis-

---

[9] *See Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 325 (5th Cir. 2009) (presumption of "good faith" for government actors), *aff'd sub nom. Sossamon v. Texas*, 563 U.S. 277 (2011).

[10] *See, e.g.*, *Sossamon*, 560 F.3d 316; *Boudreaux*, 86 F.4th 620; *Freedom from Religion Found., Inc. v. Abbott*, 58 F.4th 824 (5th Cir. 2023) ("*FFRF*"). Although we need not—and do not—decide whether the good-faith presumption survives *Fikre*, we note that *Fikre* makes no mention of that presumption, and the language that SFFA quotes appears in a section that no "parties dispute[d]." *Fikre*, 601 U.S. at 242.

sions policy to prohibit the use of race as a factor in admissions. Those actions were a direct response to *Harvard* and are not a sign of litigation posturing. There is no evidence in the record to suggest otherwise. The timing of UT's policy changes, for example, implies that the impetus was the *Harvard* decision, not this litigation. And UT is "not seeking to defend" the way that it used race "under its pre-[*Harvard*] admissions policy."

SFFA avers that because UT has never promised not to bring back its old policies, such silence undermines UT's assurances that it is "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Already*, 568 U.S. at 91 (quotation omitted). But "there is no requirement that a government actor renounce its prior conduct in order to moot a case." *Boudreaux*, 86 F.4th at 630. And "often a case will become moot even when a defendant 'vehemently' insists on the propriety of 'the conduct that precipitated the lawsuit.'" *Fikre*, 601 U.S. at 244 (quoting *Already*, 568 U.S. at 91).

SFFA relies on a Ninth Circuit decision in contending that even if UT has no intention of reviving the old policy, "the ease with which [it] could do so counsels against a finding of mootness, as 'a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the provision.'" *Bell v. City of Boise*, 709 F.3d 890, 900 (9th Cir. 2013) (citation omitted). But UT is not "otherwise unconstrained." To comply with *Harvard*, the Board of Regents repealed the rule authorizing UT's old policy.[11] The Board's "mere power to reenact [that rule] is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists." *Nat'l Black Police Ass'n v. District of Columbia*,

---

[11] The Board's Rules "may be amended by a majority vote of the full Board." RULES AND REGULS. OF THE BD. OF REGENTS Rule 10100 Sec. 5.

108 F.3d 346, 295 (D.C. Cir. 1997).

UT has satisfied its formidable burden of showing that its wrongful conduct cannot reasonably be expected to recur. SFFA's claims are moot as they relate to UT's pre-*Harvard* admissions policy.

### B. UT's Post-*Harvard* Admissions Policy

SFFA contends that (1) "UT's new admissions policy still violates the Constitution and Title VI and harms SFFA's members," and (2) "the Court can still grant SFFA effective injunctive relief that will prevent UT from discriminating based on race" by requiring UT to deny admissions officers access to racial data while they are making admissions decisions. UT's post-*Harvard* admissions policy does not fully redress those alleged injuries, so those claims remain live. For "[a]s long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Dierlam*, 977 F.3d at 477 (quoting *Knox*, 567 U.S. at 307–08).

The district court incorrectly dismissed SFFA's claims as moot because it seemingly "confuse[d] mootness with the merits." *Dierlam*, 977 F.3d at 477 (quoting *Chafin v. Chafin*, 568 U.S. 165, 174 (2013)). For example, the court "decline[d] to grant injunctive relief" and "[t]herefore" concluded that "SFFA's argument that its requested injunctive relief impedes mootness is unavailing." 2024 WL 3666177 at *7. It even declared, without explanation, that "UT's revised admissions policy is lawful" and thus dismissed SFFA's claims as moot. *Id.* at *3 (cleaned up).[12]

No one disputes that under the revised admissions policy, some of UT's admissions officers have full access, at any time, to racial check-box data and aggregate reports. And while all parties agree that it is lawful for the

---

[12] It would not be proper for a court to announce a merits decision while, at the same time, holding that there is no case or controversy remaining for it to decide.

*institution* to collect that data for the lawful purposes of reporting to government agencies and recruiting students to enroll, UT has proffered no reason why *admissions decisionmakers* need that data or even access to it—and certainly not when they are making admissions decisions. With that access, admissions officials could easily—and discreetly—continue to employ racial preferences in admissions.

The district court repeatedly stated that UT no longer considers race under its admissions policy. *Id.* at *5, *7. Not only does that confuse mootness with the merits, but it also misconstrues SFFA's claims. First, SFFA contends that it is *per se* unlawful for UT to retain the key tools of discrimination—racial check-box and aggregate racial data—in the hands of admissions decisionmakers during the decisionmaking process. Second, SFFA alleges that, even though UT's policy is facially race-neutral, it is a subterfuge for continued unlawful use of race. The first is a legal question that the district court must address. The second is impossible to answer on the limited evidentiary record in this case, and extensive discovery will be needed to reach an answer.[13]

It is eminently "[]possible for the court to grant . . . effectual relief" to SFFA, so the claims are not moot. *Church of Scientology of Cal.*, 506 U.S. at 12 (quotation omitted). For jurisdictional purposes, it does not matter how likely it is that SFFA is entitled to relief. "[A]s long as the parties have a

---

[13] To the extent that the district court made a factual finding that "UT Austin no longer considers race or ethnicity as a factor in admissions," 2024 WL 3666177 at *5, *7, we construe that finding as a reference to UT Austin's *stated*, facially-race-neutral policy. Given the razor-thin discovery as to the revised policy, it would have been impossible (*i.e.* clearly erroneous) for the district court to have made a factual finding as to whether discrimination continues to occur below the surface. It is possible that SFFA will prove, through discovery, that there is an utter disregard of UT's explicit prohibition amongst its admissions officers—or, more objectionably, that UT's admissions policy is pretextual. We express no view on those possibilities.

concrete interest, however small, in the outcome of the litigation, the case is not moot." *Dierlam*, 977 F.3d at 477 (quoting *Knox*, 567 U.S. at 307–08).

SFFA seeks declaratory relief that UT's revised admissions procedures are still unlawful and requests a permanent injunction prohibiting anyone in UT's admissions office from receiving or having access to racial checkbox data or aggregate reports on race during the admissions process. UT admits that it is continuing those practices. SFFA therefore has not secured "all the relief [it] might have won" and maintains "a concrete interest" in the outcome of the litigation.[14] Its claims remain live as to UT's revised policy.

## III.

The district court did not address SFFA's motion for summary judgment. "As a well-established general rule, this court 'will not reach the merits of an issue not considered by the district court.'"[15] Our court is one of "review, not first view," so we follow that well-traveled path and remand for consideration in the first instance. *Stringer v. Town of Jonesboro*, 986 F.3d 502, 509 (5th Cir. 2021) (quotation omitted).

\* \* \* \* \*

SFFA's claims are moot only as they relate to UT's old admissions policy. They remain live as to UT's revised policy. We therefore AFFIRM in part, REVERSE in part, and REMAND.

---

[14] *Crocker*, 115 F.4th at 667 (quoting *Fikre*, 601 U.S. at 240); *Dierlam*, 977 F.3d at 477 (quoting *Knox*, 567 U.S. at 307–08).

[15] *PHH Mortg. Corp. v. Old Republic Nat'l Title Ins. Co.*, 80 F.4th 555, 563 (5th Cir. 2023) (quoting *Magnolia Island Plantation, L.L.C. v. Whittington*, 29 F.4th 246, 252 (5th Cir. 2022)).